512

CLIFFORD A. HEATH *& a.*

v.

SEARS, ROEBUCK & CO. *& a.*

CHARLES EASTMAN *& a.*

v.

CHASE MACHINERY & SUPPLY CO., INC., *& a.*

MICHAEL WELCH

v.

AMERICAN HONDA MOTOR CO., INC.

WILLIAM CUNNINGHAM

v.

INVACARE

ROGER S. KIDDER *& a.*

v.

JEAN–GUY'S USED CARS AND PARTS, INC., *& a.*

NORMAN MALLETT *& a.*

v.

BRIDGEPORT MACHINES, DIVISION OF TEXTRON, INC.

SEARS, ROEBUCK & CO.

v.

WHITE ROGERS DIVISION, EMERSON ELECTRIC CO.

GEORGE D. LINEHAN, ADMINISTRATOR OF THE ESTATE OF
FRANCIS A. LINEHAN

v.

CLARK EQUIPMENT CORP. & a.

ETHEL L. HOLT & a.

v.

RAICHE MOBILE HOMES, INC.

July 18, 1983

514

516

*Shute, Engel & Morse P.A.*, of Exeter (*Mark S. Gearreald* on the brief and orally), for Clifford A. and Carole A. Heath.

*Wadleigh, Starr, Peters, Dunn & Kohls*, of Manchester (*John A. Lassey* on the brief and orally in No. 82-170, and *Theodore Wadleigh* on the brief and orally in No. 82-314), for Sears, Roebuck & Co.

*Law Offices of James J. Kalled*, of Ossipee (*Robert G. Whaland* on the brief and orally), for Charles and Marilyn Eastman.

*Kearns, Colliander, Donahue & Tucker P.A.*, of Exeter (*David S. Brown* on the brief and orally), for Chase Machinery & Supply Co., Inc.

*Holland & Aivalikles*, of Nashua (*William E. Aivalikles* on the brief), by brief for Michael Welch.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Lee C. Nyquist* on the brief and orally), for American Honda Motor Co., Inc.

*Craig, Wenners, Craig & McDowell P.A.*, of Manchester (*Vincent A. Wenners, Jr.*, on the brief and orally), for William Cunningham.

*Stark & Peltonen P.A.*, of Manchester (*John E. Peltonen* on the brief and orally), for Invacare.

*Upton, Sanders & Smith*, of Concord (*Gilbert Upton* and *Gary B. Richardson* on the brief, and *Mr. Richardson* orally), for Roger S. and Edith Kidder.

*Sulloway, Hollis & Soden*, of Concord (*John W. Mitchell* on the brief and orally), for Jean-Guy's Used Cars and Parts, Inc.

*Wadleigh, Starr, Peters, Dunn & Kohls*, of Manchester (*Ronald J. Lajoie* on the brief, and *Katherine M. Hanna* orally), for Jordan-Milton Machinery, Inc.

*Burns, Bryant, Hinchey, Cox & Shea*, of Dover (*James H. Schulte* on the brief and orally), for Norman and Sandra Mallett.

*Ransmeier & Spellman*, of Concord (*Brian T. McDonough* on the brief and orally), for Bridgeport Machines, Division of Textron, Inc.

*Ouellette, Hallisey, Dibble & Tanguay P.A.*, of Dover (*William L. Tanguay* on the brief and orally), for White Rogers Division, Emerson Electric Co.

*Hamblett & Kerrigan P.A.*, of Nashua, for George D. Linehan, administrator of the estate of Francis A. Linehan.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester, for Clark Equipment Corp.

*Wiggin & Nourie*, of Manchester, for International Harvester Co.

*Ahlgren & Smith*, of Manchester, and *Laflamme, Champagne & Moquin*, of Manchester, for Ethel L. and William R. Holt.

*Law Offices of Emile Bussiere*, of Manchester, for Raiche Mobile Homes, Inc.

*Brown & Nixon P.A.*, of Manchester (*Edward W. Stewart, Jr.*, on the brief), by brief for Christine Burnett *& a.*, as amici curiae.

*Stephen R. Fine*, of Manchester, and *Jerome L. Silverstein*, of Nashua, by brief for Steven Tate, as amicus curiae.

*Perkins, Phillips & Waters P.A.*, of Concord (*Edmund J. Waters, Jr.*, on the brief), by brief for Roderick LeFort, administrator of the estate of Jeanne Ann LeFort, as amicus curiae.

*Mulvey, Noucas & Sullivan P.A.*, of Portsmouth (*William A. Mulvey, Jr.*, on the brief), by brief on behalf of toxic substance tort victims, as amici curiae.

*Aeschliman & Tober*, of Portsmouth, and *Howard A. Specter*, of Pittsburgh, Pennsylvania (*Stephen L. Tober* on the brief), by brief for the Association of Trial Lawyers of America and the New Hampshire Trial Lawyers Association, as amici curiae.

*Leahy, Denault & Moody*, of Claremont (*Thomas P. Connair* on the brief), by brief, pro se, as amicus curiae.

*Myers & Laufer*, of Concord (*Howard B. Myers* and *Peter J. Duffy* on the brief), by brief for Volkswagen of America, Inc., and Volkswagenwerk, A.G., as amici curiae.

DOUGLAS, J. The plaintiffs in these consolidated appeals challenge the constitutionality of RSA chapter 507-D (Supp. 1979), governing suits for injuries caused by defective products.

In case No. 82-170, Clifford Heath was using a Sears drive ratchet to tighten the lug-bolt nuts while changing a rear tire on a logging skidder. The direction-change lever on the ratchet head snapped in two and a piece of the lever struck him, causing the near total loss of sight in one eye. The lever previously had been removed and reattached, allegedly because the metal used by the manufacturer was not suitable for northern climates and contracted in extremely cold weather. The United States District Court for the District of New Hampshire (*Loughlin*, J.), where the complaint was filed, transferred two questions to us by certification under Supreme Court Rule 34: Whether a "foreseeable repair" is a "modification or alteration" within the meaning of RSA 507-D:3 (Supp. 1979), and whether that statutory section violates the equal protection provisions of either the State or the Federal Constitution.

In case No. 82-203, Roger Kidder was injured and permanently disabled after an accident involving a crane manufactured in 1958.

Writs were brought against two prior owners and sellers of the crane for failure to disclose certain defects. The case was dismissed below by the Superior Court (*Cann*, J.), acting upon the recommendation of a Master (*Frank B. Clancy*, Esq.), because of the twelve-year statute of limitations contained in RSA 507-D:2, II(a) (Supp. 1979).

In case No. 82-275, Norman Mallett was severely injured when his hand was drawn into a vertical rotary cutting disc attached to a milling machine. Both his action and the separate loss of consortium action filed by his wife were dismissed by the Superior Court (*Dunn*, J.) under the three-year limitation provision of RSA 507-D:2, I and :5 (Supp. 1979). The plaintiffs challenge the three-year limitation as well as the "state of the art" defense set forth in RSA 507-D:4 (Supp. 1979).

In case No. 82-314, Sears, Roebuck & Co., as a defendant in another products liability case not presently before this court, seeks indemnity against the White Rogers Division of Emerson Electric Co., alleging that the latter's defective gas control valve caused an explosion in a wall heater which injured a Hampton, New Hampshire resident. This case was dismissed by the Superior Court (*Bean*, J.) as not timely filed under RSA 507-D:2, III and :5 (Supp. 1979).

In case No. 82-458, Charles Eastman, a New Hampshire resident, was injured in 1979 when a piece of a saw blade broke off and struck him in the eye. Because suit was filed more than twelve years after the Massachusetts manufacturer parted with control of the saw, the United States District Court for the District of New Hampshire (*Devine*, C.J.) transferred to us the question whether RSA 507-D:2, II(a) (Supp. 1979) violates part one, article fourteen of the New Hampshire Constitution.

In case No. 82-485, Michael Welch was injured in an accident involving a Japanese motorcycle. His case was also transferred here by the Federal District Court (*Loughlin*, J.) for a determination of the constitutionality of the statute of limitations for products liability actions.

In case No. 82-497, William Cunningham, a paraplegic patient at the Veterans' Administration Hospital in Manchester, was sitting on a portable commode when it collapsed, causing his leg to fracture. Again, the case was transferred here by the Federal District Court (*Loughlin*, J.) to determine the constitutionality of RSA 507-D:2, I (Supp. 1979).

All of these cases were consolidated for oral argument, and briefs from amici were filed as well. After the above cases were argued orally, cases Nos. 83-053 and 83-093 were filed in this court and consolidated for decision, without briefs or oral argument.

In case No. 83-053, Ethel Holt suffered permanent injuries from an explosion and fire in a mobile home that had been purchased from Raiche Mobile Homes, Inc., in March 1968. The suit was filed in June 1982, alleging that a defective bottled-gas cooking system in the mobile home caused the explosion and fire. The case was dismissed by the Superior Court (*Flynn*, J.) on the basis of the twelve-year limitation period provided in RSA 507-D:2, II(a) (Supp. 1979), the constitutionality of which is being challenged on appeal.

Finally, in case No. 83-093, Francis Linehan was killed in December 1979 in an accident involving a forklift manufactured by Clark Equipment Corp. and a tractor-trailer manufactured by International Harvester Co. Wrongful death actions were filed in December 1981, within the two-year limitation period of RSA 556:11. Nevertheless, based on a Master's (*Charles T. Gallagher*, Esq.) recommendation, the Superior Court (*Nadeau*, J.) dismissed the suits because they were instituted more than twelve years after the defendants parted with possession or control of their machines or sold them. The decedent's administrator argues that RSA 507-D:2, II(a) (Supp. 1979) is unconstitutional.

## I. *The Evolution of Products Liability Law.*

The law of products liability is of relatively recent origin. It has been noted, in fact, that a scholarly commentator could remark as late as 1955 that "'[p]roducts liability does not rank as a term of art in the courts of law.'" W. KEETON, D. OWEN, AND J. MONTGOMERY, PRODUCTS LIABILITY AND SAFETY, CASES AND MATERIALS 19 (1980) (hereinafter cited as PRODUCTS LIABILITY AND SAFETY) (quoting Wilson, *Products Liability* (pt. 1), 43 CALIF. L. REV. 614, 614 (1955)). Under Roman law at the time of Justinian, the vendor's liability turned upon whether he knew of the defect. DIG. JUST. (Book 19, 533 A.D.), *reprinted in* PRODUCTS LIABILITY AND SAFETY, at 21. By the thirteenth century in England, the growth of crafts in a feudal agricultural society led to concern in the law for "quality good after the fashion of the day." Hamilton, *The Ancient Maxim Caveat Emptor*, 40 YALE L.J. 1133, 1142 (1931).

The maxim "caveat emptor" first appeared in *Moore v. Hussey*, 80 Eng. Rep. 243 (K.B. 1601). For the next few centuries in this country and in England, the buyer had best beware. PRODUCTS LIABILITY AND SAFETY, at 24. Even during the early years of this century, an action generally could not lie against a "remote" manufacturer with whom the buyer had not directly entered into a contract ('lack of "privity"). W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 93, at 622 (4th ed. 1971). Where privity existed, negligence was the standard for recovery for personal injuries.

The Industrial Revolution during the nineteenth century led to the products liability revolution in this century, which began when a Scotsman named Donald MacPherson was injured after a wheel fell off his new 1910 Buick automobile. His $5,000 verdict was appealed on the ground that, because MacPherson had bought the Buick from a dealer instead of from Buick Motor Company, he should not be allowed to sue the manufacturer, with whom he did not stand in privity. In the famous opinion by Justice Cardozo, then of the New York Court of Appeals, the manufacturer who placed the item into the stream of commerce was held to be "responsible for the finished product." *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 394, 111 N.E. 1050, 1055 (1916).

In New Hampshire, we adopted the doctrine of strict liability in tort fourteen years ago in *Buttrick v. Arthur Lessard & Sons, Inc.*, 110 N.H. 36, 39, 260 A.2d 111, 113 (1969).

The reasons for the evolution of the law in the area of products liability are many. We live in an era of national advertising and of nationwide distribution which can add or remove a product from our store shelves in a matter of days. Many of those nationally sold products contain chemical compounds and synthetics the side effects of which clearly cannot be anticipated. It is believed that if today's products are capable of causing illness or physical injury, the risk of liability is best borne by the companies that profited from their sale, rather than by the unfortunate individual consumers. *Buttrick v. Lessard*, 110 N.H. at 39, 260 A.2d at 113; *Greenman v. Yuba Power Products, Inc.*, 59 Cal. 2d 57, 63–64, 377 P.2d 897, 901, 27 Cal. Rptr. 697, 701 (1963).

As Justice Holmes noted, the life of the law is experience, and the modern experience with consumer products has been one of ever-improving technology and rising standards of living, but also of injury and death:

> "Americans—20 million of them—are injured each year in the home as a result of incidents connected with consumer products. Of the total, 110,000 are permanently disabled and 30,000 are killed. A significant number could have been spared if more attention had been paid to hazard reduction. . . .
>
> The exposure of consumers to unreasonable consumer product hazards is excessive by any standard of measurement."

PRODUCTS LIABILITY AND SAFETY, at 2 (quoting from National Commission of Product Safety, Final Report 1 (June 1970)). Deterrence is also a valid consideration; without the stimulus of plaintiffs'

products liability actions, the incentive to improve products and make them safer would not exist. *See generally* Cowan, *Some Policy Bases of Products Liability,* 17 STAN. L. REV. 1077 (1965).

The recent rise in products liability claims and lawsuits has resulted in a corresponding increase in insurance rates for those making or selling products. This, in turn, led our own legislature in 1978 to enact a "products liability" law in the interest of protecting manufacturers who, it was believed, were being unduly burdened by rapidly rising insurance rates. *See* N.H.S. JOUR. 1020–29 (1977). It is significant that, during debate, a number of legislators expressed skepticism about the fairness of a State products liability law and about its effectiveness in stabilizing insurance rates for New Hampshire manufacturers. This concern about the legislation's effectiveness was based on the fact that most products manufactured in New Hampshire are sold in other States, and on the belief that the high insurance premiums paid by in-State manufacturers were attributable to the proliferation of lawsuits in larger industrialized States. *See, e.g., id.* at 1016–17 (remarks of Sens. Preston and Bossie); N.H.S. JOUR. 593–94 (1978) (remarks of Sen. Bossie).

In fact, in conjunction with the enactment of RSA chapter 507-D (Supp. 1979), the New Hampshire Legislature authorized the creation of a fifteen-member Commission to Study Product Injury Reparations (commission) for the purpose of evaluating the legislation's effect on products liability insurance rates. Laws 1978, 31:2. The legislature directed the commission to issue a final report by January 1, 1980, on the following matters: (1) the effectiveness of RSA chapter 507-D (Supp. 1979) "in improving the availability and affordability of products liability insurance"; (2) "other existing laws and practices which bear on the availability and affordability of such insurance"; and (3) "such changes as may be necessary to increase availability and affordability of such insurance, while at the same time allowing just compensation to those suffering injury from products." Laws 1978, 31:2.

The commission issued its final report on December 21, 1979, finding that it was "very difficult to assess the impact of RSA 507-D on the problems of availability and affordability" of products liability insurance. At the time of the report, the commission found that the "panic" rise in manufacturers' insurance rates had ended *nationwide,* and not just in New Hampshire, thereby tending to show that the State legislation was not the cause of the stabilization of rates. In conclusion, the commission stated that "[t]he problems of product liability insurance affordability and availability have eased, but it seems unlikely that this relaxation is attributable to the enactment of RSA 507-D."

Against this background, we now turn to the specific challenges raised by these consolidated cases.

II. *The Statutes of Limitation for Products Liability Actions.*

■ The constitutional challenges in these cases focus principally upon the twelve-year "statute of repose" in RSA 507-D:2, II(a) (Supp. 1979) and the three-year limitation provision of RSA 507-D:2, I (Supp. 1979). Generally, both federal and State courts recognize the power of legislative bodies to enact statutes of limitation which prescribe a reasonable time within which a party is permitted to bring suit for the recovery of his rights. The United States Supreme Court has stated:

> "It may be properly conceded that all statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; if it should do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions."

*Wilson v. Iseminger*, 185 U.S. 55, 62 (1902).

The concept of allowing a reasonable period of time for suit to be brought after the cause of action arises is not new in our law, for along with "substantive rights, the first settlers brought over the incidental rights of adequate remedy and convenient procedure." *State v. Saunders*, 66 N.H. 39, 74, 25 A. 588, 589 (1889). Thus, the "right to an adequate remedy [exists] for the infringement of a right derived from the unwritten law." *Id.*, 25 A. at 589. When it came time to establish a post-revolution form of government, the first part of our Constitution was devoted to chronicling our inherent rights. Part one, article fourteen of the New Hampshire Constitution provides:

> "Every subject of this state is *entitled to a certain remedy,* by having recourse to the laws, for *all injuries he may receive* in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."

(Emphasis added.)

■■ In an effort to facilitate the vindication of tort victims' rights, legislatures and courts have developed the "discovery" rule, under which a cause of action does not accrue until the plaintiff dis-

covers or, in the exercise of reasonable diligence, should have discovered both the fact of his injury and the cause thereof. *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 171, 371 A.2d 170, 174 (1977); *see United States v. Kubrick*, 444 U.S. 111, 117–25 (1979). The rule is premised on "the manifest unfairness of foreclosing an injured person's cause of action before he has had even a reasonable opportunity to discover its existence." *Brown v. Mary Hitchcock Memorial Hosp.*, 117 N.H. 739, 741–42, 378 A.2d 1138, 1139–40 (1977).

■ Although the legislature's power is broad in determining how long a plaintiff may have to initiate a cause of action and when that limitation period begins to run, this power may not be exercised in an unconstitutional manner. In *Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825 (1980), we held that, although not a fundamental right, "the right to recover for personal injuries is . . . an important substantive right." *Id.* at 931–32, 424 A.2d at 830. Thus, the classifications there at issue were required to be "reasonable" and to "rest upon some ground of difference having a fair and substantial relation to the object of the legislation . . . ." *Id.* at 932, 424 A.2d at 831.

In *Carson*, we ruled that the legislature's extension of the discovery rule to some medical injury plaintiffs, while denying its applicability to others, constituted an impermissible discrimination between classes of plaintiffs. We therefore held that RSA chapter 507-C (Supp. 1979) violated the equal protection provisions of our Constitution to the extent that it limited application of the rule to only a narrow class of medical-malpractice plaintiffs. *Id.* at 936, 424 A.2d at 833.

More recently, in *Henderson Clay Products, Inc. v. Edgar Wood & Associates, Inc.*, 122 N.H. 800, 451 A.2d 174 (1982), we struck down RSA 508:4-b insofar as it precluded application of the discovery rule against architects, but allowed its application against materialmen and suppliers of labor. Relying upon *Carson*, we concluded:

> "It is difficult to rationally permit a situation to exist whereby the supplier of labor and material has a liability exposure for a period of six years after the injury has been discovered or, in the exercise of due care, should have been discovered when, at the same time, the designers of the premises can be immunized from the liability before the cause of action even accrues or can be factually asserted."

*Id.* at 801–02, 451 A.2d at 175; *see* 26 ATLA L. REP. 152–53 (1983).

■ Here, too, our standard of review is whether the statute-of-limitations provisions contained in RSA 507-D:2 (Supp. 1979) are

reasonable and are substantially related to the legislative objective of reducing products liability insurance rates.

■ RSA 507-D:2, II(a) (Supp. 1979), the twelve-year "statute of repose," requires a products liability action to be brought not "later than 12 years after the manufacturer of the final product parted with its possession and control or sold it, whichever occurred last." The effect of this absolute limitation on suits against manufacturers is to nullify some causes of action before they even arise. As compared with non-products liability causes of action, which generally must be brought within six years after they accrue, *whenever* that may be, *see* RSA 508:4 (Supp. 1981), we hold that the twelve-year bar imposed by RSA 507-D:2, II(a) (Supp. 1979) is neither reasonable nor substantially related to the object of the legislation.

■■ The twelve-year limit is unreasonable because the mere purchase of pills produced by a drug manufacturer in California, or of a defective automobile made in Michigan, does not place the consumer on notice of a hidden defect injurious to his health or safety. When product defects lead to injury, our law has long provided for recovery without regard to *when* the substance or object was made or placed into the national or international stream of commerce. This is particularly important in cases where the injuries may not clearly manifest themselves until years later, such as the clear-cell adenocarcinomas found in the daughters of mothers who twenty or more years previously took a female estrogen pill commonly known as DES (diethylstilbestrol). *See, e.g., Bichler v. Eli Lilly and Co.*, 55 N.Y.2d 571, 577–78, 436 N.E.2d 182, 184, 450 N.Y.S.2d 776, 778 (1982).

The unreasonableness inherent in a statute which eliminates a plaintiff's cause of action before the wrong may reasonably be discovered was noted by Judge Frank in his dissent in *Dincher v. Marlin Firearms Co.*, 198 F.2d 821, 823 (2d Cir. 1952), in which he condemned the "Alice in Wonderland" effect of such a result:

> "Except in topsy-turvy land, you can't die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a non-existent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of logical 'axiom,' that a statute of limitations does not begin to run against a cause of action before that cause of action exists, *i.e.*, before a judicial remedy is available to a plaintiff."

(Footnotes omitted.)

██ ██ Nor do we think that the twelve-year "statute of repose" is substantially related to a legitimate legislative object. As previously noted, the crisis in products liability insurance had abated nationwide independent of RSA chapter 507-D (Supp. 1979). Nonetheless, persons injured by defective products are deprived arbitrarily of a right to sue the manufacturers responsible for those defective products by virtue of a statute that has become entirely divorced from its underlying purpose. *Cf. Boucher v. Sayeed*, 459 A.2d 87, 92–93 (R.I. 1983) (medical malpractice crisis existing at time of enactment but not at time of suit was insufficient basis to uphold statute against equal protection challenge). We do not believe that the legislature may constitutionally bar suits against manufacturers by products liability plaintiffs, as a class, twelve years after the manufacturer sold or parted with control of the product, while allowing other plaintiffs to recover for personal injuries not related to a defective product, at any time within six years after the cause of action accrues.

Our sister States of Alabama, Florida, and North Carolina have come to the same conclusion under provisions of their State Constitutions similar to part I, article 14 of our Constitution. *Lankford v. Sullivan, Long & Hagerty*, 416 So. 2d 996, 1003–04 (Ala. 1982) (ten-year statute void under ALA. CONST. art. I, § 13); *Battilla v. Allis Chalmers Mfg. Co.*, 392 So. 2d 874, 874 (Fla. 1980) (relying upon *Overland Const. Co., Inc. v. Sirmons*, 369 So. 2d 572 (Fla. 1979)) (twelve-year statute void under FLA. CONST. art. I, § 21); *Bolick v. American Barmag Corp.*, 54 N.C. App. 589, 592–95, 284 S.E.2d 188, 191–92 (1981), *modified and aff'd*, 306 N.C. 364, 293 S.E.2d 415 (1982) (six-year statute void under N.C. CONST. art. I, § 18). *See generally* Birnbaum, *"First Breath's" Last Gasp: The Discovery Rule in Products Liability Cases*, 13 FORUM 279 (1977); Massery, *Date-of-Sale Statutes of Limitation—A New Immunity for Product Suppliers*, 1977 INS. L.J. 535; Phillips, *An Analysis of Proposed Reform of Products Liability Statutes of Limitations*, 56 N.C.L. REV. 663 (1978); Note, *The Utah Product Liability Limitation of Action: An Unfair Resolution of Competing Concerns*, 1979 UTAH L. REV. 149.

The plaintiffs also challenge the three-year statute of limitations established in RSA 507-D:2, I (Supp. 1979). This three-year period begins to run from the "time the injury is, or should, in the exercise of reasonable diligence, have been discovered by the plaintiff." As previously mentioned, personal actions generally must be brought within six years of the time they accrue, with the exception of libel or slander actions, to which a three-year limit applies. RSA 508:4 (Supp. 1981). We do not think that merely because a manufactured product causes the injury, or because the cause of action is legisla-

tively defined as a "product liability action," *see* RSA 507-D:1, I (Supp. 1979), a plaintiff's injury is therefore different from any other injury.

For instance, in the context of an automobile collision case, it makes no sense to say that for that part of an injury caused by another driver's alleged negligence a six-year statute applies, while a product defect that may have been a factor in causing the harm to the plaintiff is subject to a three-year statute. Libel and slander were and are separate common-law torts which may reasonably be distinguished for statute of limitations purposes; however, there is no tort called "products liability."

For the reasons stated in our analysis of the twelve-year "statute of repose," we hold that RSA 507-D:2, I (Supp. 1979) also denies products liability plaintiffs equal protection of the laws. This is not to say that the legislature could not constitutionally establish a statute of limitations of three years for *all* personal injury actions if it so desired. However, it may not constitutionally discriminate against one class of plaintiffs for the purpose of protecting manufacturers by means of a statute of limitations which is neither reasonable nor substantially related to a legitimate legislative object.

The last statute-of-limitations provision under attack in these cases, RSA 507-D:2, III (Supp. 1979), requires third-party claims in products liability cases to be initiated within ninety days of the end of the time periods set forth in paragraphs I and II of that section. To the extent that the statute of limitations for third-party actions is dependent upon RSA 507-D:2, I and II(a) (Supp. 1979), which we have already ruled invalid, we further hold that RSA 507-D:2, III (Supp. 1979) is unconstitutional.

Although the validity of the remaining provisions of RSA 507-D:2 (Supp. 1979) has not been questioned in the cases before us, these provisions would appear to be subject to the same constitutional infirmity as the provisions actually challenged on appeal. Nor are the provisions of the section severable from one another, due to their interrelationship. Accordingly, we must void RSA 507-D:2 (Supp. 1979) in its entirety.

### III. *Modification or Alteration of Products.*

Next, we turn to RSA 507-D:3 (Supp. 1979), which provides that a "defendant may be held liable only for harm that would have occurred if the product had been used in its unaltered and unmodified condition and shall not be held liable for harm arising in any part from alteration and modification of the product by another."

528

Alterations or modifications based on the manufacturer's specifications or instructions do not bar the plaintiff's cause of action.

The plaintiffs maintain that this section violates the equal protection provisions of our State Constitution in two respects. First, they argue that the challenged provision denies persons injured by modified or altered products the same right to recover for personal injuries that is available to other products liability plaintiffs. Second, they contend specifically that RSA 507-D:3 (Supp. 1979) impermissibly distinguishes between persons injured as a result of product *modification* and persons injured as a result of product *misuse.* For the reasons stated below, we rule section three of the products liability statute to be unconstitutional.

 Under our decision in *Thibault v. Sears, Roebuck & Co.,* 118 N.H. 802, 395 A.2d 843 (1978), the parties to a products liability action are entitled to have the jury *"compare* the causal effect of the defect in the product or design with the affirmative defense of misconduct of the plaintiff and *allocate* the loss . . . ." *Id.* at 813, 395 A.2d at 850 (emphasis added). RSA 507-D:3 (Supp. 1979), however, provides that a defendant "shall not be held liable for harm arising *in any part* from alteration and modification of the product by another." (Emphasis added.) This provision thus operates to establish an absolute defense in products liability cases where the modification or alteration of the product contributes in any way to the plaintiff's injury, regardless of the dangerousness of the product or the insignificance of the modification. Consequently, RSA 507-D:3 (Supp. 1979) denies to persons injured by modified products the same right of apportionment and at least partial recovery provided to all other products liability plaintiffs in *Thibault.*

 Moreover, RSA 507-D:3 (Supp. 1979) distinguishes impermissibly between plaintiffs injured by *modified* products and plaintiffs injured by *misused* products. Under current New Hampshire law, a plaintiff may recover some percentage of his damages where his misuse of a product did not contribute more to the accident than did the manufacturer's conduct, and the misuse is found to have been foreseeable to the manufacturer. This holds true whether the product is misused by the plaintiff, *see Thibault v. Sears, Roebuck & Co.,* 118 N.H. at 809, 395 A.2d at 847, or by a third party, *see Reid v. Spadone Mach. Co.,* 119 N.H. 457, 465, 404 A.2d 1094, 1099 (1979). In contrast, RSA 507-D:3 (Supp. 1979) by its own terms bars recovery altogether by plaintiffs whose "misconduct" takes the form of modification or alteration not in accordance with the manufacturer's specifications or instructions, irrespective of how foreseeable such a modification may have been.

■ The overall effect of RSA 507-D:3 (Supp. 1979) is both arbitrary and inequitable. For example, the statute would totally bar recovery by the plaintiff in case No. 82-170, who was injured when using a *modified* Sears tool, simply because a modification contributed to the injury. Yet if the same plaintiff had received the identical injury as a result of actually *misusing* an *unmodified* wrench, he would be entitled to sue the manufacturer and have the jury consider the foreseeability of such misuse in the balance of comparative responsibility. As we noted in *Thibault*, the term "plaintiff's misconduct" includes, "where applicable, product misuse or abnormal use" as well as the older concept of "assumption of the risk" or "voluntarily and unreasonably proceeding to encounter a known danger." 118 N.H. at 812, 395 A.2d at 849. Obviously, whether modified or not by a plaintiff, a product may be misused or altered from its foreseeable use to such a degree as to absolve the manufacturer of liability. But these are questions of fact to be resolved by the trier of fact.

■ While RSA 507-D:3 (Supp. 1979) may result in some slight benefit to manufacturers, such an effect is clearly outweighed by the severe restriction of plaintiff's rights to recover for injuries caused by modified or altered products. *See Carson v. Maurer*, 120 N.H. at 936–37, 424 A.2d at 833–34. We conclude that RSA 507-D:3 (Supp. 1979) denies equal protection of the laws under the New Hampshire Constitution and is therefore invalid.

IV. *The State of the Art Defense.*

RSA 507-D:4 (Supp. 1979) codifies what is known in products liability law as the "state of the art" defense. Under this section of the statute,

> "it is an affirmative defense that the risks complained of by the plaintiff were not discoverable using prevailing research and scientific techniques under the state of the art and were not discoverable using procedures required by federal or state regulatory authorities charged with supervision or licensing of the product in question. Discoverability of risks shall be measured as of the time the manufacturer parted with possession and control of, or sold the product in question, whichever occurred last."

The plaintiffs have raised a general objection to this provision on equal protection grounds. One assertion raised by the plaintiffs is that RSA 507-D:4 (Supp. 1979) codifies current industry practice as the standard by which "discoverability of risk" is to be measured. We find this contention to be without merit.

530

It has long been recognized that because entire industries may lag behind in the development of safer and technologically feasible alternatives, "custom and usage" is an unsound standard of liability. *See The T. J. Hooper*, 60 F.2d 737, 740 (2d Cir.), *cert. denied*, 287 U.S. 662 (1932); *Hancock v. Paccar, Inc.*, 204 Neb. 468, 479–80, 283 N.W.2d 25, 35 (1979). The legislative history of RSA 507-D:4 (Supp. 1979) indicates the legislature's intent to reject mere compliance with current industry practice as a defense to liability. *See* N.H.S. Jour. 1028–29 (1977) (remarks of Sen. Bradley). Instead, RSA 507-D:4 (Supp. 1979) holds a defendant in a products liability action to the standard of technological feasibility at the time of sale or distribution. *See* Phillips, *The Standard for Determining Defectiveness in Products Liability*, 46 U. Cin. L. Rev. 101, 115 and n.71 (1977).

In recent years, some courts have held manufacturers liable for defects which, at the time of sale, were "scientifically unknowable." *See, e.g., Beshada v. Johns-Manville Products Corp.*, 90 N.J. 191, 202–09, 447 A.2d 539, 545–49 (1982). By imposing what amounts to "absolute" liability upon manufacturers, such judicial decisions sever the traditional connection between tort liability and fault. To hold Ford Motor Company to today's standard of scientific knowledge when determining liability for an injury caused by a Model T bought in 1921 appears to us to be clearly unreasonable.

We view a properly worded "state of the art" defense as being a rational means of addressing manufacturers' reasonable objection to application of modern legal concepts and scientific knowledge to products made decades ago. We therefore find it both reasonable and constitutionally permissible to raise an affirmative defense based upon "discoverability of risk" as measured by the "state of the art" at the time of distribution or sale.

We note that the standard enunciated in RSA 507-D:4 (Supp. 1979) is consistent with our decision in *Thibault v. Sears, Roebuck & Co.*, 118 N.H. at 807, 395 A.2d at 846, as well as with the judicial actions of many of our sister States. *See, e.g., Hancock v. Paccar, Inc.*, 204 Neb. at 479–80, 283 N.W.2d at 35; *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 746 (Tex. 1980). As we stated in *Thibault*, "strict liability is not a no-fault system of compensation. The common-law principle that fault and responsibility are elements of our legal system applicable to corporations and individuals alike will not be undermined or abolished" solely by a concept of spreading of risk and cost in this State. 118 N.H. at 806, 395 A.2d at 845–46.

Despite the constitutional validity of RSA 507-D:4 (Supp. 1979) viewed in isolation, the question of its severability from the portions of the products liability statute which have been stricken, remains. Indeed, the plaintiffs have asserted that if we find enough of RSA chapter 507-D (Supp. 1979) to be unconstitutional, we should follow our decision in *Carson v. Maurer* and strike down the statute in its entirety. We agree.

In *Carson*, we addressed the severability of the unconstitutional provisions of RSA chapter 507-C (Supp. 1979), the medical-malpractice statute, from the remainder of that statute. We stated that we were "not sure that the remaining provisions of RSA ch. 507-C (Supp. 1979) would have been enacted without the rest." 120 N.H. at 946, 424 A.2d at 839. Accordingly, the entire statute was stricken.

Here, too, we are not sure whether the legislature would have enacted a "state of the art" defense in the absence of all of the unconstitutional provisions of the products liability statute. We must therefore leave that question to the legislature. Because we have stricken the remainder of the substantive sections of the statute, we void the entire chapter.

In light of our holding that RSA chapter 507-D (Supp. 1979) is void in its entirety, the plaintiffs' argument that the retrospective application of the chapter under RSA 507-D:5 (Supp. 1979) is unconstitutional is moot.

> *Nos. 82-203, 82-275, 82-314,*
> *83-053, and 83-093 are reversed and*
> *remanded; Nos. 82-170, 82-458,*
> *82-485, and 82-497 are remanded to*
> *the United States District Court.*

All concurred.