747 P.2d 581

**Richard M. ANSON, Sr., and Roberta Anson, surviving parents of Richard M. Anson, Jr., Plaintiffs–Appellants,**

v.

**AMERICAN MOTORS CORPORATION, a Delaware corporation; American Motors Sales Corporation, a subsidiary of American Motors Corporation; Jeep Corporation, a subsidiary of American Motors Corporation; Phoenix American Jeep, an Arizona corporation, Defendants–Appellees.**

No. 1 CA–CIV 7625.

Court of Appeals of Arizona, Division 1, Department A.

March 31, 1987.

Reconsideration Denied Aug. 6, 1987.

Review Denied Dec. 8, 1987.

Hofmann, Salcito, Stevens & Myers, P.A. by Frank Verderame and Daniel R. Salcito, Phoenix, for plaintiffs-appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Larry L. Smith and Richard J. Woods, Phoenix and Snell & Wilmer by Robert J. Gibson, Phoenix, for defendants-appellees.

## OPINION

GREER, Judge.

The question presented for our review is whether the trial court properly granted appellees' motion to dismiss appellants' wrongful death action on the ground that the applicable statute of limitations had expired. We remand the matter to the trial court because we find that a factual issue existed for the jury to decide as to whether the appellants exercised reasonable diligence in the discovery of facts giving rise to a cause of action. In addition, a factual issue is present whether the appellees fraudulently concealed information which hindered the appellants' ability to discover a causal relationship between their son's death and the defect in the motor vehicle manufactured by the appellees.

### APPLICABLE STANDARDS

The affirmative defense of statute of limitations is properly raised in a motion to dismiss where it appears from the face of the complaint that the claim is barred. *Dicenso v. Bryant Air Conditioning Co.*, 131 Ariz. 605, 606, 643 P.2d 701, 703 (1982). The party opposing the motion then bears the burden of proving the statute has been tolled. *Bailey v. Superior Court*, 143 Ariz. 494, 498, 694 P.2d 324, 328 (1985). The trial court should not grant a motion to dismiss unless it appears certain plaintiff will not be entitled to relief under any set of facts susceptible of proof under the claims stated. *Red Carpet–Barry & Assoc., Inc. v. Apex Assoc., Inc.*, 130 Ariz. 302, 635 P.2d 1224 (1981). In reviewing the propriety of an order dismissing a complaint this court must consider all facts alleged in the complaint as true, *id.* 130 Ariz. at 303, 635 P.2d at 1225, and determine whether the complaint, construed in a light most favorable to the plaintiff, sufficiently sets forth a valid claim. *Savard v. Selby*, 19 Ariz.App. 514, 515, 508 P.2d 773, 774 (1973).

### FACTS

On June 27, 1979, appellants' son died from injuries sustained when the American Motors Jeep CJ–7 he was driving went out of control and overturned on Rural Road in Tempe. Appellants' second amended complaint states decedent lost control of the vehicle as he "attempted to move said vehicle to the left," and that while attempting this maneuver, the jeep, "because of defective design and mechanical malfunction, went out of control, flipped and overturned, thereby causing internal and external injuries to decedent ... and as a proximate result of said injuries, Richard M. Anson, Jr., died." Appellants' response to appellees' motion to dismiss further explains decedent's jeep "pitched forward and rolled over" as decedent attempted to maneuver around a puddle of water located in his path on Rural Road. The response states that "[t]he Jeep's rollbar collapsed and contributed to the massive head injuries and instant death of" the decedent.

On March 8, 1982, appellants brought this wrongful death action against appellees American Motors Corporation and two of its subsidiaries (collectively referred to hereinafter as AMC), and Phoenix American Jeep for the death of their son. Appellants' second amended complaint sets forth seven theories of relief, including strict liability in tort, misrepresentation pursuant to *Restatement (Second) of Torts* § 402B, breach of express and implied warranties,

negligence, fraudulent misrepresentation and a claim for punitive damages. Briefly summarized, appellants' complaint alleges that: (1) the jeep in question had a propensity to overturn, and its roll bar, although represented as a safety feature, was structurally inadequate to protect the driver from serious head injuries; (2) these defects in design and manufacture rendered the jeep inherently and unreasonably dangerous absent adequate or suitable warnings; (3) AMC made representations regarding the safety and "ruggedness" of the jeep and its roll bar when operated on all types of terrain; (4) appellants and their son made specific inquiries with employees of Phoenix American Jeep regarding the vehicle and received assurances it was roadworthy for the maneuvering circumstances its driver would encounter; (5) appellants relied on the representations of both AMC and Phoenix American Jeep in purchasing the vehicle; and (6) both AMC and Phoenix American Jeep knew or should have known of the dangerous nature of the vehicle and that their representations were false.

With regard to computation of the limitations period, the complaint alleges in relevant part that: (1) appellants were first apprised of the jeep's alleged defects by a "60 Minutes" television program broadcast in December, 1980; (2) in December, 1981, AMC entered into a consent decree with the Federal Trade Commission pursuant to which it agreed to place warning stickers on future jeeps and in owner's manuals which provided that "sudden sharp turns and abrupt maneuvers may result in loss of control" and further agreed to send these stickers and manuals to registered owners of Jeep CJ's manufactured after 1972; (3) AMC represented the jeep as a safe vehicle and denied any defects existed in the design of the jeep prior to and after the airing of the "60 Minutes" broadcast until after the date of the FTC order; and (4) because of the fraud and misrepresentations of appellees, the statute of limitations in this case did not begin to run, if at all, until AMC entered into the consent decree with the FTC.

The trial court granted appellees' motion to dismiss by formal order dated January 9, 1984 "by reason of statute of limitations." We have jurisdiction of this appeal pursuant to A.R.S. § 12–2101(B).

APPLICABLE STATUTE OF LIMITATIONS

Appellants' claims fall within the broad definition of "product liability action" as defined in A.R.S. § 12–681(3):

'Product liability action' means any action brought against a manufacturer or seller of a product for damages for bodily injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation assembly, testing, packaging, labeling, sale, use or consumption of any product, the failure to warn or protect against a danger or hazard in the use or misuse of the product or the failure to provide proper instructions for the use or consumption of any product.

The statute of limitations for a "product liability action" is set forth in A.R.S. § 12–551, and provides, with a certain inapplicable exception, that a "product liability action as defined in § 12–681 shall be commenced and prosecuted within the period prescribed in § 12–542." Arizona Revised Statutes § 12–542, in turn, provides in relevant part:

[T]here shall be commenced and prosecuted within two years after the cause of action accrues, and not afterward, the following actions:
1. For injuries done to the person of another.
2. For injuries done to the person of another when death ensues from such injuries, which action shall be considered as accruing at the death of the party injured.

Cf., Mack v. A.H. Robins Co., Inc., 573 F.Supp. 149 (D.Ariz.1983), aff'd, 759 F.2d 1482 (9th Cir.1985) (holding the two-year limitations period of A.R.S. § 12–542(1) for "injuries done to the person of another" applicable to claims seeking damages for negligence, breach of warranty, products liability, and fraudulent misrepresentation

arising from plaintiff's use of the "Dalkon Shield" intrauterine device).

■ The language of A.R.S. § 12–542(2) specifically defines the date a wrongful death action "accrues" for purposes of commencing the limitations period as the date of death. Arizona Revised Statutes § 12–542(1), the statute of limitations for "injuries done to the person of another," contains no such legislative definition of the word "accrues." In cases involving that and other sections of A.R.S. § 12–542, the term has been held as a matter of judicial construction to embody the so-called "discovery rule." Pursuant to the discovery rule, a cause of action does not "accrue" until a plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by the defendant's negligent conduct. *See Kenyon v. Hammer*, 142 Ariz. 69, 73, 688 P.2d 961, 965 (1984).

Appellants' original complaint was filed March 8, 1982, more than two years and eight months after their son's death on June 17, 1979. Appellants argue that despite the express language of A.R.S. § 12–542(2) their complaint set forth facts sufficient to withstand appellees' motion to dismiss.

Appellants first argue our supreme court's decision in *Kenyon v. Hammer*, *supra*, requires application of the discovery rule to this wrongful death action. Appellants also argue that even if the discovery rule is inapplicable and the statute of limitations commenced to run at death, the limitations period was tolled by appellees' fraudulent concealment of their claims. We consider appellants' arguments in this order.

THE DISCOVERY RULE

■ Briefly stated, appellants' argument based on *Kenyon v. Hammer* is that to deny the benefits of the discovery rule to some product liability claimants (*i.e.* statutory beneficiaries of a wrongful death action) and not others would constitute an interference with the fundamental right to bring and pursue an action for damages for death or bodily injury as guaranteed by Article II, § 31 and Article 18, § 6 of the Arizona Constitution. Article II, § 31 provides that "[n]o law shall be enacted in this state limiting the amount of damages to be recovered for causing the death or injury of any person." Article 18, § 6 provides that "[t]he right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." In addition, a statutory classification scheme that interferes with this fundamental right would arguably be in violation of Article II, § 13, the equal protection clause of the Arizona Constitution, absent a showing the legislative distinction drawn by A.R.S. § 12–542(2) between the statutory beneficiaries of wrongful death actions and other tort claimants is necessary to further a compelling state interest.

The discovery rule has been adopted in a great variety of situations and applied to tort actions in Arizona. *Id.* 142 Ariz. at 76, 688 P.2d at 968. "In most cases the discovery rule has been applied as a matter of judicial holding under the provisions of A.R.S. § 12–542, the general statute applying to tort actions, which requires the action to be filed within two years after it 'accrues.'" *Id.*, n. 6. In *Kenyon v. Hammer* the court held that the imposition of an absolute bar three years from the date of injury on most medical malpractice claimants, the abolition of general tolling provisions recognized for all other tort claims, and the internal distinctions between classes of medical malpractice claimants, all discriminate against and among medical malpractice claimants in a manner which infringes upon fundamental rights. *Id.* 142 Ariz. at 87, 688 P.2d at 979. Further, the statute in question (A.R.S. § 12–564, since repealed by the legislature in 1985) violated equal protection and was unconstitutional under Article II, § 13 of the Arizona Constitution insofar as it purported to abolish or limit the discovery rule in medical malpractice cases. *Id.* The court went on to state that the courts of Arizona shall follow the discovery rule as set out in *Mayer v. Good Samaritan Hosp.*, 14 Ariz.App. 248, 482 P.2d 497 (1971). We believe that the rationale uti-

lized by the court in *Kenyon v. Hammer* also applies to the statute of limitations (A.R.S. 12–542(2)) for wrongful death claims.

*Kenyon v. Hammer* sets forth the relevant arguments that the right to recover damages for bodily injuries is a fundamental one in Arizona. These arguments apply to wrongful death actions also, since the applicable constitutional provisions prohibit "limiting the amount of damages to be recovered" for injury or death. (Article 18, § 6 and Article II, § 31). We see no need to duplicate the analysis in *Kenyon v. Hammer* because of the above language.

Arizona Revised Statutes § 12–542(2) contains the legislative definition of the term "accrues," as did A.R.S. § 12–564. Thus, the cause of action accrues at the time of death of the person injured. The general statute of limitations in A.R.S. § 12–542 is also two years and applies to persons injured, but the two years does not begin to run until the cause of action "accrues," which means that the discovery rule applies. Hence the claim is barred two years from when the plaintiff knew or should have known facts giving rise to the claim. *Long v. Buckley*, 129 Ariz. 141, 629 P.2d 557 (App.1981). Therefore, it seems apparent that A.R.S. § 12–542 places a special burden upon tort claimants in a wrongful death action. For example, if the Ansons' son had been severely injured and permanently disabled the discovery rule would have applied. The appellees argue that since the Ansons' son died A.R.S. 12–542(2) applies, and thus the discovery rule is inapplicable. We disagree. The statute unfairly discriminates against claimants filing a wrongful death action.

We do not believe that abolishing the discovery rule with respect to wrongful death actions is necessary and rationally related to important state goals. Recently the Supreme Court of New Hampshire dealt with this issue in terms of a twelve-year "statute of repose" for product liability actions. *Heath v. Sears, Roebuck and Co.*, 123 N.H. 512, 464 A.2d 288 (1983). After surveying the purposes for a statute of limitation the New Hampshire court held

that abolition of the discovery rule and enactment of a statute of repose for product liability actions were not substantially related to the legislative objective of reducing product liability insurance rates, since there was no evidence that such enactment would bring about a reduction of rates and consequent reductions in prices of products. *Id.* 123 N.H. at 525, 464 A.2d at 294–95. The court noted that the effect of the statute in question was to nullify some causes of actions before they even arise, and eliminates a plaintiff's cause of action before the wrong may be reasonably discovered. *Id.* 123 N.H. at 525, 464 A.2d at 295. Similarly, the Arizona statute precludes some plaintiffs from pursuing a cause of action before it is discovered. This distinction is not rationally related to important state interests. The statute is unreasonable and arbitrary and is violative of the equal protection provision in the Arizona Constitution.

The potential injustice in not applying the discovery rule in wrongful death actions was noted in the dissent of Judge Edwards in *Kington v. United States*, 396 F.2d 9, 12 (6th Cir.1968), *cert. denied*, 393 U.S. 960, 89 S.Ct. 396, 21 L.Ed.2d 373 (1968); cited with approval in *White v. Johns–Manville Corp.*, 103 Wash.2d 344, 693 P.2d 687 (1985):

> [If we] adopt the rule that the cause of action 'accrues' at death, regardless of whether or not appellant could then have known of the exlistence [sic] of the cause of action, we commit this circuit to a rule which is bound to have totally unreasonable results in other cases where the cause of death is not so promptly discovered.

Washington does not have a special statutory limitation for wrongful death actions, but instead has a three-year statute of limitation for tort actions (three years after the cause of action shall have accured). *White, supra*, 103 Wash.2d at 348, 693 P.2d at 690–91. Citing the rationale of Judge Edwards in *Kington*, and precedents from a number of other states, the court held that "a wrongful death action 'accrues' at the time the decedent's personal representative discovered, or should have discovered, the

cause of action." *Id.* 103 Wash.2d at 352–53, 693 P.2d at 693 and *see In Re Johns–Manville Asbestosis Cases*, 511 F.Supp. 1235, 1236 (N.D.Ill.1981), where the court held that, despite an Illinois statute providing that a wrongful death action "shall be commenced within two years after the death," the discovery rule applied to the claimant's wrongful death action.

Both the above cases and *White* apply to situations where the injury occurred over a long period of time, and not as a result of one sudden traumatic event. The rationale used by the court in *White*, though, is applicable in this case. The court noted that, "It is unreasonable to expect or require, as a matter of law, the ordinary wrongful death claimant to initiate and conduct the massive research necessary to prove the causal link between occupational exposure and resulting cancer; such research takes numerous years and vast resources." *White, supra*, 103 Wash.2d at 355, 693 P.2d at 694.

The appellants here could not have initiated and conducted the research necessary to prove the causal link between defects in the jeep and the death of their son. In addition, one of the claims of the appellants is that the manufacturer concealed information from the appellants, and hence they were unable to discover a cause of action. The court concluded in *White* that the problem of "unearthing" wrongful death causes of action is minimal compared to the hardships imposed on the victims left without a remedy through no fault of their own. *Id.* 103 Wash.2d at 356, 693 P.2d at 694.

In *Barrett v. United States*, 689 F.2d 324 (2d Cir.1982), *cert. denied sub nom.*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983) the court held that a 42 U.S.C. § 1983 action did not "accrue" on the date the deceased died. The court emphasized that critical facts concerning causation were, practically speaking, not discoverable by the plaintiffs since they were in control of the government and were only selectively disclosed to the plaintiffs. *Id.* at 329. The court, therefore, held that the "accrual" determination was a question of fact; and the inquiry would be what knowledge

the plaintiff had regarding cause of death, whom she believed responsible, and her diligence in pursuing her claim. *Id.* at 329–30. Finally, the court stated that when the decedent died, "[the deceased's] family had no reason to investigate any further based on the information available at the time of death." *Id.* at 330.

We believe that the rationale in *White* and *Barrett* applies to the present case. Thus, under Arizona law, the question of when the plaintiffs knew or should have known of the circumstances surrounding their son's death is critical to determining whether the statute of limitations has run. *Long v. Buckley, supra*, 129 Ariz. at 143, 629 P.2d at 559. In the instant case, since the trial court erroneously concluded that the discovery rule did not apply to a wrongful death action, the trial court did not reach the question of whether there was a material factual dispute as to when the plaintiffs knew or should have known of the alleged malpractice by defendants. The record before us reflects that there were genuine issues of material fact on the issue of time of discovery. For instance, the appellants contend that the appellees concealed the existence of dangers related to defects in Jeep CJs, and continued to represent the jeep as a rugged and safe vehicle long after reports and tests revealed that the Jeep CJ tended to turn over and its roll bar could not provide protection.

Normally the adoption of a statute of limitations is the prerogative of the legislature. The Arizona Constitution, though, in Article 18, § 6 and Article II, § 31 curtails the legislature's power to limit the amount of damages recovered. Legislation cannot abolish or abrogate causes of action, since abrogation not only limits the amount recoverable but allows no recovery at all. *Kenyon, supra*, 142 Ariz. at 87, 688 P.2d at 971, n. 9. The statute of limitations in A.R.S. § 12–542(2) does more than limit or regulate the time to bring the action. It has the effect of abolishing a claim even before a plaintiff knows or has reason to know a cause of action exists. Arizona Revised Statutes § 12–542(2) is also violative of Article II, § 13 since it impermissi-

bly distinguishes between statutory beneficiaries of wrongful death actions and other tort claimants. After considering the equities, we hold that the statute of limitations in A.R.S. § 12–542(2) is unconstitutional, and apply the discovery rule in wrongful death actions. The two-year statute of limitations of A.R.S. § 12–542(2) will remain in effect except that the courts of this state shall follow the discovery rule as set out in *Mayer v. Good Samaritan Hospital, supra.* We therefore conclude that the trial court erred in granting a dismissal on the wrongful death claim.

## FRAUDULENT CONCEALMENT

█ Appellants argue that even if their action accrued and the statute of limitations commenced to run upon the death of their son, appellees' continuing representations regarding the "ruggedness" and roadworthiness of the jeep and the safety of the roll bar fraudulently concealed their cause of action so as to toll the two-year limitations period. They contend that appellees' representations regarding the jeep's safety induced them to purchase and to use the jeep, and after the death, continued to prevent them from discovering the existence of their cause of action until the issuance of the FTC order. Hence, this argument is related to the above analysis and discussion of the discovery rule since the alleged fraudulent concealment by the appellees affected the time when the appellants knew or reasonably should have known the necessary facts for a cause of action.

Appellees, on the other hand, argue that the type of fraud necessary to estop a party from raising the affirmative defense of the statute of limitations is conduct directed to concealment of a cause of action which has already arisen, and that this conduct by definition cannot be the same conduct constituting the basis of the claim. *See, e.g., Nelson v. A.H. Robins Co.,* 515 F.Supp. 623 (N.D.Cal.1981); *In re Northern Dist. of California "Dalkon Shield" IUD Products Liability Litigation, Sidney–Vinstein,* 503 F.Supp. 194 (N.D.Cal. 1980) (fraudulent concealment requires fraud concealing existence of claim, not

fraud in the inducement). Appellees argue this distinction is supported by prior Arizona cases which have described the type of affirmative conduct necessary to toll the limitations period, including *Tovrea Land and Cattle Co. v. Linsenmeyer,* 100 Ariz. 107, 130, 412 P.2d 47, 63 (1966) (stating "[t]here must be positive acts of concealment done to prevent detection ... some trick or contrivance intended to exclude suspicion and prevent inquiry"); *Coronado Dev't Corp. v. Superior Court,* 139 Ariz. 350, 352, 678 P.2d 535, 537 (App.1984) (requiring "a positive act tending to conceal the cause of action from the plaintiff"); *Jackson v. American Credit Bureau, Inc.,* 23 Ariz.App. 199, 202, 531 P.2d 932, 935 (1975) (noting "the defendant's conduct must be directed to obtaining the delay of which he actively seeks to take advantage by pleading the statute").

We think the true inquiry, however, is not whether the defendant has wrongfully concealed the existence of the cause of action itself, but whether the defendant has wrongfully concealed facts giving rise to the cause of action in such a manner as to prevent a plaintiff from reasonably discovering a claim exists within the limitations period. *Baker v. Beech Aircraft Corp.,* 39 Cal.App.3d 315, 323, 114 Cal. Rptr. 171, 176 (1974) (noting the case "is not so much a concealment of a cause of action as concealment of material facts which would have disclosed to appellants the nature and extent of the right of action"). This definition brings the concept of fraudulent concealment into line with the discovery rule set forth above. Further, this formulation is consistent with the legislative determination that a cause of action based on fraud "accrues" upon "discovery by the aggrieved party of the facts constituting the fraud." A.R.S. § 12–543(3); *see also, Coronado Dev't. Corp. v. Superior Court, supra; Lederman v. Phelps Dodge Corp.,* 19 Ariz.App. 107, 505 P.2d 275 (1973) (statute of limitations in a fraud case begins to run when the plaintiff by reasonable diligence could have learned of the fraud, whether or not he actually learned of it).

Appellants rely on the factually similar case of *Baker v. Beech Aircraft Corp.* to support the position that their complaint sets forth facts regarding defendants' fraudulent concealment sufficient to withstand a motion to dismiss. In *Baker*, appellants brought an action for wrongful deaths and personal injuries arising out of an airplane accident against the airplane manufacturer. The trial court dismissed the action on the grounds appellants' third amended complaint failed to show the applicable statute of limitations had been tolled by defendants' fraudulent concealment of a defect in the airplane's fuel system. On appeal, the *Baker* court reversed, finding the complaint adequately alleged the requirements necessary to establish fraudulent concealment in California, including, *inter alia*, the requirement "that the plaintiff was not at fault for failing to discover [the fraud] or had no actual or presumptive knowledge of facts sufficient to put him in inquiry." *Id.* 39 Cal.App.3d at 321, 114 Cal.Rptr. at 175. The court held this requirement was met in view of the complaint's allegations, which included: (1) that the plane had lost engine power and crashed because of the improper design of the fuel system; (2) that Beech had represented to the Federal Aviation Administration prior to and following the air crash that the fuel system was safe though it had knowledge the system was unsafe; (3) that Beech's failure to reveal its knowledge to the National Transportation Safety Board to assist that agency in its investigation led that agency to conclude the plane had crashed due to "power plant failure for undetermined reasons"; (4) that the defect could not have been discovered by plaintiffs without extensive and elaborate testing, and (5) that appellants did not become aware of the falsity of Beech's representations until referred to a Wall Street Journal article.

The court discussed the applicable law and facts as follows:

> Facts in excuse of a more diligent inquiry on the part of appellants were alleged in the third amended complaint. Whether appellants should have made discovery sooner in view of the facts set forth, is not a question to be concluded as a matter of law. (*Neet v. Holmes*, 25 Cal.2d 447, 468, [154 P.2d 854].) Whether a party has notice of 'circumstances sufficient to put a prudent man upon inquiry as to a particular fact,' and whether 'by prosecuting such inquiry, he might have learned such fact' (Civ.Code, § 19) *when facts are susceptible to opposing inferences* are themselves questions of fact to be determined by the jury or the trial court.

*Id.* 39 Cal.App.3d at 323, 114 Cal.Rptr. at 176. (Emphasis added).

We agree with the *Baker* court's analysis as applied to the facts of that case. There were no circumstances alleged which would have indicated to a reasonable person, without extensive testing, that a defect in the fuel system caused the crash. There was, therefore, no reason for a reasonable person to doubt the truth of the representations made by Beech regarding the safety of the fuel system, and consequently nothing to put the appellants in that case on notice that either the particular fuel system in question was faulty or that Beech's representations were false. Here, the appellants allege that the false representations made by AMC prevented them from discovering defects in the jeep. Thus, the appellants argue that they had no knowledge of important facts related to the cause of death of their son, and were not sufficiently aware of the causal relationship between the defects in the jeep and their son's death to file a claim.

Other courts have also recognized that fraudulent concealment can toll the statute of limitations. *See,* for example, *Much v. Sturm, Ruger and Co., Inc.,* 502 F.Supp. 743 (D.Mont.1980), *affm'd* 685 F.2d 444 (9th Cir.1982). In general, to toll the statute of limitations the fraud must prevent inquiry, elude investigation or mislead the party who claims the cause of action. *Id.* 502 F.Supp. at 744 (citation omitted). The concealment must come after the injury, and "there must be some affirmative act of the defendant calculated to obscure the existence of a cause of action." *E.g., Hesse*

*v. Vinatieri,* 145 Cal.App.2d 448, 302 P.2d 699, 702 (1956).

Arizona courts have consistently held that a failure to disclose true facts leading to the plaintiff's injury amounted to fraudulent concealment, and that such action tolls the applicable statute of limitations until the plaintiff discovers or was put on reasonable notice of the breach of trust. *Langager v. Lake Havasu Community Hosp.,* 688 F.2d 664, 667 (9th Cir.1982). This rule has usually been applied to health providers and other professionals. For example, in *Sato v. VanDenburgh,* 123 Ariz. 225, 599 P.2d 181 (1979) the claim for damages resulted from the negligent performance of professional services rendered by an accountant. The doctrine of fraudulent concealment may either toll the statute of limitations or prevent its running, and is of judicial origin. *Mayer, supra,* 14 Ariz.App. at 252, 482 P.2d at 501.

In *Landgraff v. Wagner,* 26 Ariz.App. 49, 546 P.2d 26 (1976) the plaintiff did not discover a steel surgical clamp for nearly nine years after an operation. She filed suit within two years after discovery, but the trial court barred the claim under the applicable statute of limitations. On appeal the plaintiff prevailed on the grounds that there remained to be litigated issues of fact requiring trial, namely that the defendants had failed to disclose the claimed negligent act when they either knew or should have known of it, and whether the plaintiff knew or should have known of the presence of the surgical clamp. *Id.* 26 Ariz.App. at 56, 546 P.2d at 33.

The appellants here claim that American Motors through its agents made representations to the public concerning the safety and "ruggedness" of the Jeep CJ that concealed defects of the product and induced reliance by the appellants. The appellants argue that by concealing the defects the statute of limitations was tolled until discovered by the appellants.

The appellees maintain that the manufacturer is entitled to publicly defend its product and that "there is a significant distinction between advertising a product to the general public and affirmatively concealing information between a plaintiff and the manufacturer of the product during the limitation period." Appellees' answering brief, p. 15 and 20. The appellees cite *Much, supra,* to illustrate the difference between legitimate advertising and fraudulent concealment. *Id.* at p. 15. The plaintiff in *Much* was injured when his revolver discharged into his leg as he was crawling under some heavy brush. The statute of limitations had run before he had filed suit against the manufacturer. The plaintiff, therefore, claimed that Ruger had fraudulently concealed material facts regarding an allegedly defective safety on its pistols. The basis of the allegation for this fraudulent concealment was Ruger's representation in magazine advertisements, apparently both before and after the accident, that its revolver was safe. The court found that these advertisements did not amount to an affirmative act calculated to obscure the existence of a cause of action. *Id.*

*Much* is distinguishable because there were no allegations or evidence to support a finding that the manufacturer had knowledge of the defective safety during the relevant time period. Here the appellants cite a number of studies and tests done on the Jeep CJ which indicate that the manufacturer was aware of the defects more than a decade prior to the accident that killed their son. The appellants allege that these reports and tests are important because they reveal the appellee's knowledge that the Jeep CJ tended to overturn and its roll bar could not provide protection during a roll over. And that, despite the manufacturer's knowledge of these dangers, it continued to misrepresent the Jeep CJ as a rugged and safe vehicle. The appellants claim they could not reasonably be expected to know of the cause of their son's death prior to the consent decree between American Motors and the Federal Trade Commission. The appellants explain that they were unaware of the cause of the jeep's roll over because the appellees fraudulently concealed the defects with the Jeep CJs, and that it was not until February 23, 1982 that news of the consent order became public as its contents were outlined in the Wall Street Journal. It was at this time

that the appellants had sufficient information regarding the severe dangers created by defects in the Jeep CJ to file a claim. In stark contrast, appellant claims that appellees had this information since the late 1960's, and it failed to pass this information along to the appellants and other consumers but instead made false representations concerning the safety of the Jeep CJ. Clearly, if appellants' allegations are true, they would be sufficient to toll the limitation period under both the discovery rule and the doctrine of fraudulent concealment. Whether the appellees did in fact fraudulently conceal the dangers of driving a Jeep CJ is not to be resolved by this court, but remains an issue of fact to be determined by the trier of fact.

For the foregoing reasons, the order of dismissal is reversed and remanded to the trial court.

MEYERSON and KLEINSCHMIDT, JJ., concur.