No. 55,243

IRA S. PRICE, JR., ADMINISTRATOR c.t.a. for the Estate of IRA S. PRICE, SR., deceased, *Appellee,* v. WILLIAM G. GRIMES, *Appellant.*

(677 P.2d 969)

Opinion filed February 18, 1984.

*Robert D. Hecht,* of Scott, Quinlan & Hecht, of Topeka, argued the cause and was on the brief for the appellant.

*Douglas E. Wells,* of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is a civil action by Ira S. Price, Sr. against William G. Grimes for breach of contract, fraud and misrepresentation. The jury returned a verdict for Price in the amount of $85,000 compensatory damages and $50,000 punitive damages. Grimes appeals.

As a preliminary matter the procedural facts of this case need to be related. This action was filed November 13, 1980, by Ira S. Price, Sr., by and through his conservator, Ira S. Price, Jr. Ira S. Price, Sr. died during the pendency of the action prior to trial and Ira S. Price, Jr., as administrator c.t.a. of the estate of Ira S. Price, Sr., deceased, was substituted as the party plaintiff.

Ira S. Price, Sr., had owned and operated a restaurant in North Topeka for many years. It was known as the Ira Price Cafe and was located next to the DX Truck Stop. Price was known as a friendly, charitable person. Ira Price and William Grimes were long-time friends. Grimes is a preacher in a small church in Topeka. The church is located on a seven-acre tract and was formerly a residence. Grimes had ambitions to improve his property by building two garlows and remodeling the residence. He approached his good friend, Ira Price, about furnishing the money. Ira Price agreed. The money was provided in most unusual ways. Some was delivered to Grimes in envelopes in the cafe; some was delivered in envelopes by the filling station attendant next door and some was furnished by Grimes charging material at lumber yards to Ira Price. There was no note or mortgage between the close friends. Ira Price claimed he advanced $165,000 to William Grimes. The improved property was to be sold, Price paid and any profit divided equally between Price and Grimes.

As time went by, Grimes' need for money continued without end and in spite of Price's infusions of capital Grimes developed severe financial problems. In 1977 Grimes filed a petition in bankruptcy listing Price as a creditor in the amount of $32,000. Price urged the action as a method for Grimes to overcome his problems. Price paid the attorney fees for the action. Price

continued to advance cash and credit to Grimes after the bankruptcy action.

Grimes denies he owes Price any money. He does not deny Price furnished him money and credit, but maintains all was advanced as gifts to him by Ira Price because of their close friendship. The credibility of Grimes' claim that the advances of money were mere gifts was destroyed by tape recordings of two telephone conversations he had with Ira Price where he acknowledged he owed the money and promised to repay it. The jury believed Price's version and returned a verdict for him as previously noted.

Grimes contends Price's action for fraud is barred by the statute of limitations, K.S.A. 60-513(a)(3). The last transactions between the parties occurred more than two years prior to suit. The statute provides in .pertinent part:

"The following actions shall be brought within two (2) years  .  .  .  .
.  .  .  .  .  .

"(3) An action for relief on the ground of fraud, but the cause of action shall not be deemed to have accrued until the fraud is discovered."

We dealt with this issue in *Augusta Bank & Trust v. Broomfield,* 231 Kan. 52, 62-63, 643 P.2d 100 (1982), where we stated:

" 'Discovery of the fraud' has been defined by this court to mean the time of actual discovery or when, with reasonable diligence, the fraud could have been discovered. [Citation omitted.] It does, however, imply actual knowledge, not mere suspicion of wrong. Further, even though his suspicions might have been aroused a party may be lulled into confidence by certain representations and forego any further investigation."

In *Augusta,* the court determined Broomfield was lulled into reliance by representations made, and that the action was timely filed. This case is similar. Here, Price was constantly reassured by Grimes he would sell his property and repay the money loaned, even as late as November 13, 1980. The suit was filed November 13, 1980. We hold the suit timely filed.

Grimes also claims Price did not plead facts which disclose his inability to discover the fraud by the exercise of ordinary diligence. Price cites 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-208, p. 38 (1979), which states:

"Now that discovery in its broadest scope is available to all parties alike the need for the technical pleading vanishes from the picture, not because the rule says it must but because the parties will no longer find any great need for anything more than a bare-bones pleading which outlines the nature of the claim."

An examination of the petition shows Price clearly satisfied the requirements of notice pleading.

The court permitted introduction into evidence of a federal criminal conviction of Grimes. Appellant was convicted of violating 7 U.S.C. § 2024(b) (1982), which prohibits unauthorized use or possession of food stamp coupons. Grimes contends evidence of the conviction was improperly admitted and cites K.S.A. 60-421, which provides:

"Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his or her credibility. If the witness be the accused in a criminal proceeding, no evidence of his or her conviction of a crime shall be admissible for the sole purpose of impairing his or her credibility unless the witness has first introduced evidence admissible solely for the purpose of supporting his or her credibility."

Price argues the objection at trial was not specific and the issue should not be reviewed on appeal. The objection at trial consisted solely of the word "objection." Grimes did not object when the judgment of the criminal conviction was offered into evidence. In *State v. Garcia,* 233 Kan. 589, Syl. ¶ 7, 664 P.2d 1343 (1983), it was said:

"An appellate court will not review alleged error in the admission of evidence in the absence of timely objection made thereto, or, if objection is made, unless the specific grounds thereof are clearly stated."

Appellant's objection was inadequate and, therefore, bars the raising of the issue on appeal.

Appellant next contends statements made by the decedent, Ira S. Price, Sr., testified to by his wife and son at trial, were inadmissible hearsay. The decedent's wife and son testified the decedent had told them he had loaned money to Grimes who would sell his property and repay the loan.

Appellee argues the hearsay statements are admissible pursuant to K.S.A. 60-460(d)(3), which states:

"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except . . . .

. . . .

"(3) if the declarant is unavailable as a witness, [a statement] by the declarant at a time when the matter had been recently perceived by the declarant and while the declarant's recollection was clear and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort."

We agree. The facts here conform to the test set out in *State v.*

*Hobson,* 234 Kan. 133, 158, 671 P.2d 1365 (1983), where Chief Justice Schroeder wrote:

"To admit hearsay statements under this provision the trial court must find (1) the declarant is unavailable as a witness, (2) the matter described was recently perceived by the declarant and the statement made while his memory was fresh, and (3) the statement was made under circumstances so as to show that it was in good faith, before there was an action pending, and with no incentive to falsify or distort. 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-460(d), p. 240 (1979). The trial court is necessarily given considerable discretion in admitting statements under this exception. Vernon's Kansas C. Civ. Proc. § 60-460(d) (1965); 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-460(d) (1979). In *Smith v. Estate of Hall,* 215 Kan. 262, 268, 524 P.2d 684 (1974), we held that under this provision the presence or absence of an incentive to falsify or distort is a question of fact to be determined by the trial judge in light of all the circumstances. See also *State v. Brown,* 220 Kan. 684, 688, 556 P.2d 443 (1976)."

The trial court did not abuse its discretion in admitting the hearsay statements of Ira Price Sr's. wife and son pursuant to K.S.A. 60-460(*d*)(3).

Grimes further argues the decedent was mentally incompetent after his June 1980 stroke and all statements made by him after that time should be inadmissible. The trial court ruled the statements were admissible and the decedent was not mentally disabled. The court submitted the evidence to the jury, allowing Price's alleged diminished mental capacity to affect only the weight of the evidence, not its admissibility. This was not an abuse of discretion.

The appellant states that fraud was not properly pled or proved. K.S.A. 60-209(*b*) provides:

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."

An examination of the petition discloses it states the circumstances constituting fraud with the requisite particularity. Grimes argues fraud was not proved at trial. In *Nordstrom v. Miller,* 227 Kan. 59, Syl. ¶¶ 6-9, 605 P.2d 545 (1980), we stated:

6. "Actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or recklessly made with disregard for the trust, where another party justifiably relies on the statement and acts to his injury."

7. "Fraud is never presumed and must be proven by clear and convincing evidence."

8. "The term 'clear and convincing evidence' means: The witnesses to a fact

must be found to be credible, the facts to which the witnesses testify must be distinctly remembered; the details in connection with the contract must be narrated exactly and in order; the testimony must be clear, direct and weighty, and the witnesses must be lacking in confusion as to the facts at issue."

9. "The existence of fraud is ordinarily a question of fact. An appellate court's review is limited to determining whether the trial court's finding is supported by competent evidence when that evidence is weighed in a manner most favorable to supporting the trial court's determination. This court is not concerned with the credibility of witnesses or the weight of their testimony, and the trier of facts, not the court of appellate review, has the responsibility of determining what testimony should be believed."

Evidence was introduced to establish money was given by Price to Grimes, and Grimes bought building materials on Price's account. Grimes testified he never promised to repay Price from the proceeds of the sale of his property. The two taped conversations between Price and Grimes introduced at trial contradict Grimes' testimony. The tapes confirm there was an agreement to sell the property and Grimes would repay Price from the proceeds. There was competent evidence of fraud proven at trial to support the jury's verdict.

Grimes claims the special verdict form used herein permitted the jury to award punitive damages without finding he had committed the independent tort of fraudulent representation.

Appellant bases his argument on the Court of Appeals holding in *Atkinson v. Orkin Exterminating Co.*, 5 Kan. App. 2d 739, 625 P.2d 505 (1981), where the court determined the verdict form allowed the jury to award punitive damages without finding an independent tort. We find the verdict form used here distinguishable from that in *Atkinson*. Here, in question three of the verdict form, the jury found Grimes' conduct was either a willful breach of contract or constituted fraud. In question four the jury awarded $50,000 for the fraudulent conduct of Grimes. When these two questions are read together it is apparent the jury found Grimes' conduct was fraudulent before it awarded punitive damages. In *Atkinson* the jury did not have these two questions to construe together. The questions there indicated the jury might have awarded punitive damages without determining an independent tort existed. This issue is therefore without merit.

Appellant's final issue pertains to the sufficiency of the evidence establishing a contract. In the recent case of *Arrowhead*

*Constr. Co. v. Essex Corp.*, 233 Kan. 241, 248-49, 662 P.2d 1195 (1983), we examined appellate review of formation of a contract:

"The question as to whether a binding contract was entered into depends upon the intention of the parties and is a question of fact. [Citation omitted.] As such, this court's function is only to determine if the trial court's finding there was a contract is supported by substantial competent evidence. [Citation omitted.] If it is, there was no error.

"In *Steele v. Harrison*, 220 Kan. 422, 428, 552 P.2d 957 (1976), this court reiterated the basic rules regarding contract formation:

" 'In order for parties to form a binding contract there must be a meeting of the minds on all the essential terms thereof. [Citations omitted.] To constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract.' [Citation omitted.]

. . . .

"The Restatement (Second) of Contracts § 33 (1981), offers some guidance here:

" '(1) Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.

" '(2) The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.

" '(3) The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance.'

"Comment *a* to this section makes clear the omission of a single term is not always fatal to the contract:

" '[T]he actions of the parties may show conclusively that they have intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon. In such cases courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain.

" 'An offer which appears to be indefinite may be given precision by usage of trade or by course of dealing between the parties. Terms may be supplied by factual implication, and in recurring situations the law often supplies a term in the absence of agreement to the contrary.' "

Grimes maintains no evidence was introduced to show how much money and credit was to be advanced or how much the property was to be sold for. This is true, but it does not affect the validity of the contract established between Price and Grimes.

The tapes established repayment was agreed to by Price and Grimes. The amount to be expended on improvement of the Grimes' property and the amount of property to be sold after improvement need not have been determined at the time of contracting. The amounts would depend upon fluctuations in the

market place. There was sufficient evidence in this case to establish the existence of a contract.

The judgment of the trial court is affirmed.