952 F.2d 1215
 Prod.Liab.Rep. (CCH) P 13,053
Prince ALEXANDER, Jr., Personal Representative of the Estate
of Prince Alexander, Deceased, on behalf of said estate and
on behalf of himself, Marvin A. Alexander and Tanya L.
Alexander, minors; L.M. Demko; and Thomas W. Webber, Sr.,
Personal Representative of the Estate of R.A. Webber,
Deceased, on behalf of said estate and the heirs of R.A.
Webber, Plaintiffs-Appellants,
v.
BEECH AIRCRAFT CORPORATION, a Delaware corporation; Rupert
Industries, a division of C & J Associates Inc.,
an Illinois corporation; and Does II
through X, inclusive,
Defendants-Appellees.
 No. 88-1749.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 26, 1991.
 
 James F. Leggett of Leggett & Kram, Tacoma, Wash. (Charles W. Harris of Curfman, Harris, Borniger & Rose, Wichita, Kan., with him on the brief), for plaintiffs-appellants.
 David S. Wooding of Martin, Pringle, Oliver, Wallace & Swartz (William L. Oliver, Jr., with him on the brief), for defendant-appellee Beech Aircraft Corp.
 Michael M. Lane of McCullough, Campbell & Lane, Chicago, Ill. (Patrick M. Graber and Michael D. Hultquist of McCullough, Campbell & Lane, Chicago, Ill., and Ronald P. Williams of Morrison, Hecker, Curtis, Kuder & Parrish, Wichita, Kan., with him on the brief), for defendant-appellee Rupert Industries.
 Before HOLLOWAY, SEYMOUR and EBEL, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 This is an appeal by plaintiffs-appellants Prince Alexander, Jr., a personal representative; by L.M. Demko; and by Thomas W. Webber, Sr., also a personal representative, from an order of the United States District Court for the District of Kansas, granting defendant-appellee Beech Aircraft Corporation's (Beech) motion for summary judgment and defendant-appellee Rupert Industries' (Rupert) motion to dismiss. These rulings were made in a wrongful death and personal injury action arising from a tragic plane crash in Indiana. The rulings were premised on the Indiana products liability statute of repose, and other Indiana statutes of limitations and wrongful death act limitations, because the air crash giving rise to the claims asserted in this suit occurred there.
 
 
 2
 * On February 18, 1984, Prince Alexander Sr., a United States Army aviator, rented a model A23A Beechcraft Musketeer from Pat Kesler in Alabama, for a flight to Hammond, Indiana. Passengers on the flight with Alexander included R.A. Webber and L.M. Demko, also United States Army personnel. Alexander had the appropriate Federal Aviation Administration (FAA) license to operate the aircraft and he had been given a check ride in the plane by Kesler. During the flight to Indiana the aircraft ran out of gas. Alexander attempted to land the plane without engine power at a nearby airfield to which he was directed by personnel at the Evansville, Indiana, radar controller station. The plane crashed on approach to the airport, killing Alexander and front seat passenger Webber and seriously injuring rear seat passenger Demko.
 
 
 3
 The airplane was manufactured in 1967 by Beech and was sold and delivered to Wiles-Holloway, Inc. of Baton Rouge, Louisiana, in June of that year. I R. Doc. 56, Ex. A. In December 1971 the plane was sold to Pat Kesler, who owned the aircraft at the time of the accident on February 18, 1984. This action against Beech for wrongful deaths and for the personal injuries of Demko, asserting theories of strict liability in tort and negligence, was filed on February 13, 1986, in the United States District Court for the District of Kansas. The original diversity complaint named Beech and Does I through X inclusive as defendants.[1] On July 10, 1986, plaintiffs were granted leave to file their first amended complaint, which added Rupert, a division of C & J Associates, Inc., manufacturer of the seatbelts on the plane, as a defendant. The amended complaint was filed on August 26, 1986, averring strict liability and negligence claims against Beech, Rupert and Does II through X, inclusive, Rupert being substituted for Doe I. The amended complaint also alleged a breach of warranty by Rupert with respect to the strength of the seat belts.
 
 
 4
 Beech filed a motion for summary judgment on the theory that the plaintiffs' claims were barred by the ten-year Indiana statute of repose for products liability actions, Ind.Code Ann. § 34-4-20A-5 (Burns 1986).[2] Rupert filed a motion to dismiss based on the proposition that the plaintiffs' claims were barred by the two-year limitation in the Indiana personal injury statute of limitations, Ind.Code Ann. § 34-1-2-2 (Burns 1986), and the two-year Indiana condition on the bringing of wrongful death actions, Ind.Code Ann. § 34-1-1-2 (Burns 1986). The motions of Beech and Rupert were granted by the district court.
 
 
 5
 The judge held that the choice of law rules of Kansas, as the forum state, should be applied, Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); and that the law of the Kansas forum as to the limitation of actions governs, including the Kansas borrowing statute, Kan.Stat.Ann. § 60-516. That statute provides:
 
 
 6
 Actions originating in another state. Where the cause of action has arisen in another state or country and by the laws of the state or country where the cause of action arose an action cannot be maintained thereon by reason of lapse of time, no action can be maintained thereon in this state except in favor of one who is a resident of this state and who has held the cause of action from the time it accrued.
 
 
 7
 Pursuant to the borrowing statute the district judge applied the Indiana statute of repose and sustained the motion of Beech for summary judgment. Again under the borrowing statute, he applied the Indiana two-year limitation on personal injury actions and the two-year Indiana condition on the bringing of wrongful death actions and sustained the motion to dismiss of Rupert. Plaintiffs moved for reconsideration of these rulings and their motion was denied. This appeal followed, and the plaintiffs-appellants make numerous arguments challenging the correctness of the rulings in favor of Beech and Rupert. We turn now to those contentions.
 
 II
 A.
 
 8
 First, plaintiffs argue that the Pilot/Operator Manual or Handbook of Beech dated December 1979 was a replacement part; it was defective and misrepresented and overstated the amount of usable fuel to the pilot;[3] the handbook is considered part of the aircraft for FAA certification purposes;[4] the furnishing of the 1979 defective handbook recommenced the running of the ten-year Indiana statute of repose; and the proximate causation of the accident by the handbook was a fact question requiring expert testimony and one inappropriate for summary judgment, citing Black v. Henry Pratt Co., 778 F.2d 1278 (7th Cir.1985), inter alia.
 
 
 9
 In connection with their strenuous arguments about inaccurate indications of usable fuel remaining, the plaintiffs point to a portion of the record of messages transmitted between the Beechcraft plane, N3639Q, and the Indianapolis ARTCC Evansville Radar Controller, quoted in plaintiffs' memorandum in opposition to Beech's motion for summary judgment, I R. Doc. 65 at 2:
 
 ZULU Time Source Transmission
 
 10
 1036:15 EVV 39Quebec the computer shows that it's going to be about 35
 
 
 11
 minutes flying time to Evansville Airport; are you going
 
 
 12
 to have enough, uh, fuel to get there.
 
 
 13
 1036:26 39Q This is 39Quebec affirmative.
 
 
 14
 1038:35 39Q 39Quebec out of gas, going down this time.
 
 
 
 Plaintiffs rely on the transmission as evidence that the misperception of remaining fuel was critical in the causation of the crash.
 We agree with the district judge that plaintiffs cannot recast their allegations of Beech's failure to warn properly in the handbook into a breach of duty regarding replacement parts. The Black opinion treated seats, bearings, packing, and glue of a valve mechanism as replacement parts and reasoned that since they were furnished within the ten-year limit of the statute of repose, if they were unreasonably dangerous and were the proximate cause of the injuries complained of, then the complaint was timely. However, Black held that the replacement parts were not defective and were not related to the malfunctioning of the chain mechanism involved in the accident; thus plaintiff had no cause of action as to such parts. Moreover, any action based on the original delivery of the valves in 1967 was barred by the ten-year limitation in the statute of repose. 778 F.2d at 1283-84.
 There is, of course, a different case presented here in that the allegedly defective handbook was related to the allegations of plaintiffs that the aircraft's "fuel gauges were not accurate, the fuel tanks trapped fuel, the fuel system had a propensity to dump fuel overboard...." First Amended Complaint, I R. Doc. 32 at 4.[5] Nevertheless, we must agree with the district judge here that plaintiffs have not explained or offered evidence that the instructions or manuals served as "replacement parts." Memorandum and Opinion at 16. In the context of products liability concepts, we are not persuaded that the handbook was a "replacement part." Instead we feel the handbook and such instructions should be viewed as part of the evidence proffered by plaintiffs which bears on a failure to warn theory against Beech.
 We are persuaded by the reasoning of the Sixth Circuit in Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1134-35 (6th Cir.1986). There the court upheld a summary judgment for the defendant, a manufacturer of a personnel hoist, on the basis of a ten-year statute of repose of Tennessee, generally similar to that of Indiana. The plaintiffs there argued that their suit was not time barred because the defendants had sold TVA an instruction manual for the hoist in 1980, which was a "product" as defined in the Tennessee Act, making the suit timely. The Sixth Circuit referred to the statutory definitions in the Tennessee Products Liability Act, which included a definition that " '[p]roduct' means any tangible object or goods produced." The court stated that
 We do not think that the Tennessee Supreme Court would interpret the word 'product,' as defined and used in the statutory provisions quoted above, to include the instruction manual furnished to TVA in 1980. Although the definition of a 'product liability action' includes actions based upon the 'warning' or 'instruction ... of any product,' Tenn.Code Ann. § 29-28-102(6), and, while a failure to warn or provide proper instructions are theories upon which a plaintiff may proceed, the instructions themselves are not a 'product' as defined by the act.
 799 F.2d at 1135 (emphasis added).
 We note that the Indiana Products Liability Act contains a definition that " 'product' means any item or good that is personalty at the time it is conveyed by the seller to another party. It does not apply to a transaction that, by its nature, involves wholly or predominantly the sale of a service rather than a product." Ind.Code Ann. § 34-4-20A-2 (Burns 1986). We feel, as the Sixth Circuit, that the instructions themselves are not a product as defined by the act. Therefore, the issuance of the instruction page in December 1979 did not recommence the running of the statute of repose.
 We feel that the essence of plaintiffs' claims regarding the Beechcraft A23A Musketeer fuel system is failure to warn of a dangerous condition which existed at the time of the original manufacture and delivery of the aircraft in 1967, primarily that the A23A handbook, placards and fuel gauges did not accurately reflect the amount of usable fuel remaining in the fuel tanks. Plaintiffs attempt to assert this as a replacement part theory by claiming that Beech wrongfully failed to classify installation of decals and placards on usable fuel as mandatory and by issuing a revised statement in the owners/pilot's handbook which did not adequately warn readers of the actual usable fuel capacity of the aircraft.[6]
 Plaintiffs are not claiming that either the revised handbook or the fuel gauge correction decal kit created a more dangerous condition than that which existed at the time of the aircraft's original manufacture and delivery. In fact, the fuel gauge and placard correction kit was not installed on the aircraft flown by Alexander, Sr.[7] And the replacement manual page, while confusing and possibly misleading, attempted to correct statements in the earlier manual. The pertinent December 1979 sheet from the new manual with the statements about usable fuel, and Service Instruction 0624-281 on replacarding to increase the indication of the amount of unusable fuel, are attached as Appendix A to this opinion.
 The district judge pointed out that such a claim of failure to warn has been held by the Indiana Supreme Court to come within the Indiana products liability statute of repose. In Dague v. Piper Aircraft Corporation, 275 Ind. 520, 418 N.E.2d 207 (1981), the plaintiff argued that even if it were found that the statute of repose barred her other claims, her claim of failure to warn of the product's dangerous nature showed a breach of a continuing duty and would not be so barred. The Indiana Court disagreed:
 [W]e hold, however, that section five likewise bars plaintiff's cause of action based on a negligent failure to warn the user of the aircraft's alleged defect....
 Section two of the act (Burns Ed. § 34-4-20A-2) defines the key terms used in the act. Thus a 'product liability action' includes 'all actions brought for or on account of personal injury, disability, disease, death or property damage caused by or resulting from, the manufacture, construction or design of any product.' Plaintiff asserts that the duty to warn is a general one and is in no way peculiar to the law of products liability. Therefore, her argument runs, because the legislature did not specifically refer to claims resulting from the alleged failure of the manufacturer or seller to warn a potential customer or user of a product's latently defective nature, then it must be presumed that the legislature did not intend this Act to apply to such an action.
 We are not persuaded by this argument ... it seems clear that the legislature intended that the Act govern all product liability actions, whether the theory of liability is negligence or strict liability in tort....
 ... [A]n action for damages resulting from the alleged failure of a manufacturer or seller to warn a user of his product's latently defective nature is certainly a product liability action based on a theory of negligence, and, ultimately, is one in which the claim is made that the damage was caused by or resulted from the manufacture, construction or design of the product.
 
 
 [418]
 N.E.2d at 211-12 (emphasis added)
 In sum, we agree with the district court's reasoning on the lack of merit in the plaintiffs' "replacement part" theory and their related arguments concerning the operator's handbook and the service instructions. In these arguments the plaintiffs are asserting a claim of failure to warn concerning conditions in the aircraft as manufactured and delivered in 1967. The plaintiffs' underlying complaint concerns that aircraft, its fuel management and indications on its gauges of remaining fuel. The Indiana Products Liability Act's statute of repose, as construed by the Indiana courts, bars recovery on such claims.
 B.
 Plaintiffs maintain further that the public policy of Kansas, the forum jurisdiction, prevents the application of the Indiana statute of repose. They argue that there was fraud by Beech in not warning purchasers and users of the aircraft of either the faulty fuel gauges and placards or of the inadequate seat belts; that under Kansas public policy the running of the statute of repose was tolled until discovery of such defects following the accident; and that there is no statute of repose in Kansas which is similar to that of Indiana. Thus, plaintiffs say that Kansas public policy precludes the application of the Indiana statute of repose.
 At the outset, we note that while Kansas does not have a statute of repose identical to that of Indiana, see Ind.Code Ann. § 34-4-20A-1-5 (Burns 1986), it does have a statute of repose effective after the expiration of a product's "useful safe life." However, this Kansas statute has an exception where the seller misrepresents facts about the product or conceals information about it so as to cause harm to the plaintiff. See Kan.Stat.Ann. § 60-3303 (1983).[8]
 When the conflict of laws rule of a forum refers to the law of another jurisdiction, there is a public policy exception to the application of foreign law which is contrary to the strong public policy of the forum. This is a corollary of the principle that "[n]o action will be entertained on a foreign cause of action, the enforcement of which is contrary to the strong public policy of the forum." Restatement (Second) of Conflict of Laws § 90. The Restatement's comment stresses that this rule has a "narrow scope of application"; that "[a] mere difference between the local law rules of the two states will not render the enforcement of a claim created in one state contrary to the public policy of the other"; and that "[a]ctions should rarely be dismissed because of the rule of this section." Id. cmt. a, b, c.
 We cannot agree with plaintiffs' argument that Kansas public policy bars the application of the Indiana statute of repose. We agree with the application by the district court of the Indiana Products Liability Act statute of repose, although we follow a different process of reasoning. The judge properly concluded that in such a tort action, the Kansas courts apply the lex loci delicti, here the law of Indiana, where the wrong and injury occurred. Hawley v. Beech Aircraft Corp., 625 F.2d 991, 993 (10th Cir.1980). We are persuaded that the Indiana statute of repose should be applied as substantive law which governs the viability of the plaintiffs' cause of action.[9] We agree with the courts which have held that such statutes of repose are substantive. Thornton v. Cessna Aircraft Co., 886 F.2d 85, 87 (4th Cir.1989); Goad v. Celotex Corp., 831 F.2d 508, 511 (4th Cir.1987), cert. denied, 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 906 (1988); Wayne v. T.V.A., 730 F.2d 392, 401 (5th Cir.1984), cert. denied, 469 U.S. 1159, 105 S.Ct. 908, 83 L.Ed.2d 922 (1985); Myers v. Hayes International Corp., 701 F.Supp. 618, 623 (M.D.Tenn.1988). Thus, we feel that the Indiana statute of repose should be applied as a matter of the substantive law of the place of wrong and injury, instead of being incorporated as the proper statute of limitations to follow pursuant to the Kansas borrowing statute.
 Considering the matter as one of Kansas substantive law and public policy, we are not persuaded that the Indiana statute of repose should be disregarded. We do note that in Dow Chemical Corp. v. Weevil-Cide Co., Inc., 630 F.Supp. 125, 128-29 (D.Kan.1986), reversed on other grounds, 897 F.2d 481 (10th Cir.1990), a Wisconsin direct action statute was denied application in a diversity suit on the basis of the longstanding Kansas rule against referring to insurance in trials. The court noted that Kansas "cases have upheld the hypothesis that mention of the odious term may not be breathed lest prejudice arise." Id. at 128 (quoting Schmidt v. Farmers Elevator Mutual Insurance Co., 208 Kan. 308, 491 P.2d 947, 953 (1971)). However, we do not feel that Kansas public policy would reject the application of the Indiana statute of repose here. We are convinced by the reasoning in Thornton, 886 F.2d at 88, where the Fourth Circuit held that the absence of a comparable statute of repose in South Carolina, the forum state, did not render the statute of repose of Tennessee, the place of injury, contrary to South Carolina public policy.
 It can be plausibly argued that the exception in the Kansas statute of repose, § 60-3303, see note 8, supra, preventing application of the statute where the seller misrepresents facts about its product, represents Kansas public policy; and that because of misrepresentation by Beech concerning usable fuel, application of the Indiana statute of repose should be denied as a matter of Kansas public policy.
 We disagree. Like the Thornton court, we are not convinced that the difference in the two statutes demonstrates such a strong public policy in Kansas as is required for the rejection of the substantive law of the place of wrong and injury, Indiana. See also Loucks v. Standard Oil Co. of New York, 224 N.Y. 99, 120 N.E. 198, 201 (1918) (law of place of injury creating right applied; difference in statutes of forum state or absence of similar statute "not enough to show that public policy forbids us to enforce the foreign right"). The plaintiffs' cause of action arose in Indiana, the Kansas conflict of laws rule refers to Indiana law as the substantive basis for the rights of the parties, and we are not persuaded that a strong Kansas public policy calls for the rejection of the Indiana statute of repose which is a part of Indiana's substantive law.[10]
 C.
 Plaintiffs next argue that the Indiana statute of repose is unconstitutional under both the Indiana and the United States constitutions. Plaintiffs claim that the statute violates equal protection and due process principles by arbitrarily denying the right of free access to the court system and by destroying the remedy before a plaintiff's cause of action even arose.
 The Indiana Supreme Court has previously addressed and rejected a similar challenge to the Indiana statute of repose based on the Indiana Constitution. Dague, 418 N.E.2d at 213. Dague contended, as plaintiffs say in this case, that the statute "deprive[d] her of access to open court." Id. The Indiana Court reasoned that since there is no vested property right in an unaccrued cause of action, the Indiana legislature was free to limit such causes of action as it saw fit. Id. Consequently, the Court held that the statute of repose is constitutional under the Indiana Constitution's guarantee in Article One, Section Twelve, that all courts shall be open, and that for injury to one's person, property or reputation, one "shall have remedy by due course of law." Id.; Orr v. Turco Manufacturing Company, 484 N.E.2d 1300 (Ind.App.1985).[11]
 The Indiana statute of repose has also withstood a number of similarly framed challenges based on the federal constitution. See Braswell v. Flintkote Mines, Ltd., 723 F.2d 527, 529-30 (7th Cir.1983) (due process), cert. denied, 467 U.S. 1231, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984); Pitts v. Unarco Industries, Inc., 712 F.2d 276 (7th Cir.) (due process and equal protection), cert. denied sub nom., 464 U.S. 1003, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983); Bowman v. Niagara Mach. and Tool Works, Inc., 620 F.Supp. 1484, 1485-86 (S.D.Ind.1985) (commerce clause and access to the courts). In Pitts, the Seventh Circuit responded to an argument that the ten-year statute of limitation in the Indiana Product Liability Act was unconstitutional as being violative of due process and equal protection principles. The Seventh Circuit stated that an unaccrued cause of action is not a property right protected by the Fourteenth Amendment, and thus "[t]he Indiana legislature could, if it wanted, do away entirely with wrongful death actions beginning tomorrow." Pitts, 712 F.2d at 279; see Silver v. Silver, 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221 (1927). The court reasoned that the lessening of the risk of loss to manufacturers was a legitimate legislative purpose which should not be contravened by the courts. Pitts, 712 F.2d at 280; see Chase Securities Corp. v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945) (upholding lifting of a limitations bar); Simpson v. United States, 652 F.2d 831, 833-34 (9th Cir.1981); DiAntonio v. Northampton-Accomack Memorial Hospital, 628 F.2d 287, 291 (4th Cir.1980).
 We are persuaded by the reasoning of the Seventh Circuit in Pitts and we have similarly rejected challenges to legislative provisions barring claims that have not vested. See Salmon v. Schwarz, 948 F.2d 1131, 1142-44 (10th Cir.1991). While the statutes are harsh, we cannot agree that they deny due process or equal protection or that they invalidly deprive one of access to the courts in light of policy reasons for the statutes such as avoiding the risks and cost of litigation to manufacturers after a lengthy passage of time.[12]
 We hold that both the federal and state constitutional challenges of plaintiffs to the Indiana statute of repose lack merit.
 D.
 Next, plaintiffs argue that there is a material fact issue as to whether Beech's defective or negligent attempts to correct deficiencies in the aircraft--suggested installation of shoulder harnesses in 1980 and recommendation in Service Instruction 0624-281 in 1974 for installation of a decal kit on unusable fuel--were distinct and separate actions from the original design and manufacture of the aircraft so as to avoid the bar of the Indiana statute of repose. Brief of Appellants at 28-30.
 We cannot agree. Under the Dague rationale, any alleged negligence by Beech of this sort should be considered as a claim of a failure to warn and this theory does not remove such claims by the plaintiffs from the bar of the statute of repose. We need not repeat our reasoning based on the Dague opinion and for reasons already given we hold that these arguments of plaintiffs lack merit.
 E.
 Plaintiffs say that the discovery rule used by the Indiana Court in Barnes v. A.H. Robins Co., Inc., 476 N.E.2d 84 (Ind.1985), should be applied here to preserve the claim against Rupert.[13] They argue that under this rule, the running of the two-year personal injury statute of limitations and the two-year life of the wrongful death action against Rupert should not have begun until Beech disclosed photos of the aircraft wreckage, pursuant to court order,[14] identifying Rupert as the manufacturer of the seat belts. It is also claimed by plaintiffs that application of the discovery rule to only certain circumstances, such as toxic torts, constitutes a violation of equal protection.
 We are not persuaded. As noted by the district court, the Indiana case adopting the discovery rule was specifically limited to the "precise factual pattern ... which is injury to a plaintiff caused by a disease which may have been contracted as a result of protracted exposure to a foreign substance." Id. at 84; see Covalt v. Carey-Canada, Inc., 543 N.E.2d 382, 384 (Ind.1989). The rationale behind this limitation lies in the unique difficulties facing plaintiffs in discovering the ill effects of long term chemical exposure. We see, as did the district court, no reason to change the application of the rule as made by the Indiana Court. See Jones v. Cloyd, 534 N.E.2d 257, 259 (Ind.Ct.App.1989) (rejecting application of discovery rule to medical malpractice claims). Further, we find no merit in the plaintiffs' argument that denial of the discovery rule here, when it applies to other classes of torts, is a violation of equal protection. We agree with the rejection of similar arguments by the Seventh Circuit in Braswell, 723 F.2d at 531, and in Pitts, 712 F.2d at 280.
 As further support for plaintiffs' argument for reversal of the ruling for Rupert, plaintiffs say that the commencement of the suit against Rupert should be treated as the date when the original complaint was filed, February 13, 1986; that although Rupert was not named as a party then, Rupert was substituted for Doe I in the first amended complaint and that under Fed.R.Civ.P. 15(c) the claim against Rupert related back to the commencement of the action so as to be timely.
 Such a claim will only relate back to the date of the original complaint if three conditions are met: (1) the amended complaint involves the same transaction or occurrence as the original complaint; (2) the new party had notice of the action prior to the expiration of the statute of limitations such that the party will not be prejudiced in maintaining a defense on the merits; and (3) the new party knew or should have known that but for a mistake in identity, the action would have been brought against him. Watson v. Unipress, Inc., 733 F.2d 1386, 1390 (10th Cir.1984); Fed.R.Civ.P. 15(c). The district court found that the latter two conditions were not met and relation back was not appropriate. We agree. Since plaintiffs never attempted to serve Rupert until after the statute of limitations expired, and plaintiffs claim no other basis of notice to Rupert, the required notice to Rupert was lacking. See infra part F. Notice to the new party within the limitations period is a critical requirement of Rule 15(c) without which there is no relation back. See Gilles v. United States, 906 F.2d 1386, 1390 (10th Cir.1990) (en banc); Watson, at 1390.
 F.
 Plaintiffs also say that Rupert's removal of its offices and registered agent from Illinois, without proper notification to the Secretary of State, was a violation of Illinois law and tolled the running of the Indiana statute of limitations. See Ill.Stat. ch. 110, p 13-208.
 The district court held that this tolling issue was unpersuasive because Rupert was not named as a defendant until after the statute of limitations expired. We agree. Moreover, fraudulent concealment under Indiana law is a narrow doctrine which usually requires a specific intent by the defendant to avoid suit. See Tolen, 570 F.Supp at 1151. No facts have been alleged which support a theory of intentional concealment.
 G.
 Plaintiffs next argue that there is a claim for breach of express and implied warranty against Rupert which is not barred by the Indiana limitation on such claims. Specifically, it is argued that Rupert represented on the belt label that the seat belts conformed to FAA regulation FAA-TSO-C22f, yet failed to insure proper installation so as to meet this standard.
 Plaintiffs contend that the requirement of privity is satisfied by the vertical privity from Rupert to Mr. Broussard (the original purchaser of the aircraft), to Kesler, to Alexander. Alternatively, plaintiffs say that the aircraft passengers were third party beneficiaries of the warranties. The district court held that there was no basis on which to find privity of contract between Rupert and plaintiffs, which is necessary under Indiana law to maintain an action for breach of warranty. We agree. See Corbin v. Coleco Industries, Inc., 748 F.2d 411, 414-15 (7th Cir.1984).
 H.
 The final claim of error made by plaintiffs is based on the fact that the United States Army paid for the medical treatment of Demko. Plaintiffs say that the United States' subrogation claim is governed by the federal three-year statute of limitations of 28 U.S.C. § 2415(b). Therefore, plaintiffs contend, citing United States v. Emons Industries, Inc., 406 F.Supp. 355 (S.D.N.Y.1976), that to the extent that this suit involves the United States' subrogation interest, the United States is the real party in interest and 28 U.S.C. § 2415(b) applies.
 The district court found that since no claim was being asserted by the United States in this case, the argument regarding 28 U.S.C. § 2415(b) was without merit. We agree. There is no indication that 28 U.S.C. § 2415(b) was designed to apply to any cause of action which was not brought by the United States. The United States is not a party to this suit and Alexander's attempt to maintain his action by claiming that he is asserting a portion of his claim on behalf of the United States is unpersuasive.
 AFFIRMED.
 APPENDIX A
 APPENDIX A
 CLASS II
 Beechcraft SERVICE INSTRUCTIONS
19, 23, 24 No. 0624-281
 ATA Code 28-00
 Kit No. 23-2003-1 S
SUBJECT: FUEL SYSTEM - REPLACARDING TO INDICATE MINIMUM FUEL
 FOR TAKE OFF AND INCREASE AMOUNT OF UNUSABLE FUEL
EFFECTIVITY: BEECHCRAFT A23-19, 19A, M19A and B19, series MB-1
 through MB-520; B19 Sport 150 serials MB-521
 through MB-654; 23, A23, A23A, B23 and C23, serials
 M-1 through M-1361; C23 Sundowner 180, serials
 M-1362 through M-1516; A23-24 and A24 , serials
 MA-1 through MA-368; A24R, serials MC-2 through
 MC-95; A24R Sierra 200, serials MC-96 through
 MC-150.
REASON: To provide the parts and procedures required to
 comply with new FAA unusable fuel requirements.
COMPLIANCE: At the owner's discretion.
DESCRIPTION: New fuel quantity decals are to be installed at the
 fuel tank filler openings, on the fuel selector
 valve guard, on the instrument panel below the fuel
 gages, and on the face of the fuel gages.
APPROVAL: FAA Approved - DOA CE-2.
MANPOWER: The following information is for planning purposes
 only:
 Estimated man-hours: 4 hours.
 Suggested number of men: 1 man.
MATERIAL: A complete set of decals for all configurations of
 19, 23 and 24 aircraft is contained in Kit Number
 23-2003-1 S. The decals applicable to the aircraft
 configuration are to be used from the kit and the
 remaining decals may be discarded. The kit is
 available through your BEECHCRAFT Parts and Service
 Outlet at a suggested selling price of $6.00 each.
 (Price subject to change without notice.)
WARRANTY: BEECHCRAFT Warranty on a new airplane is 180 days
 from delivery or 180 days from the date noted on
 the Owner Warranty Card. Parts and labor noted
 herein will be allowed on BEECHCRAFTS within
 warranty at the time these Service Instructions are
 released.
SPECIAL TOOLS: None.
WEIGHT AND BALANCE: None.
REFERENCES: None.
PUBLICATIONS It is recommended that a note be made on Figures 15
 AFFECTED: and 16 of all 19, 23 and 24 series Parts Catalog
 copies to "See Service Instructions No. 0624-281."
AW-931 1 of 2
Beech Aircraft Corporation issues service information for the benefit of
owners and fixed base operators in the form of three classes of Service
instructions. CLASS 1 (Red Border) are changes, inspections and
modifications that could effect safety. The factory considers
compliance is mandatory. These are mailed to:
 (a) Owners of record on the AA Registration list:
 (b) Those having a publications subscription:
 (c) BEECHCRAFT Parts and Service Outlets:
Those owners previously requesting notification by card will receive a
card on Class I and II Service instructions. CLASS II (Green Border)
covers changes, modifications, improvements or inspections the factory
feels will benefit the owner and although highly recommended, they are
not considered mandatory compliance at the time of issuance. CLASS
III (No Border) covers changes which are wholly optional, maintenance
aids, product improvement kits and miscellaneous service information.
Compliance is entirely at the owner or operator's prerogative. Copies of
Class II and III are distributed per b and c above information on
Owner's Notification Service or Subscriptions can be obtained through any
BEECHCRAFT Aviation Center, Support Center, International
Distributor, or the factory As Service Instructions are issued,
temporary notation in the miles should be made until the index is
revised. Warranty will be allowed only when specifically detailed in the
Service instructions and in accordance with the Beech Warrant Policy.
PLAINTIFF'S
EXHIBIT
 19
-------------------------------------------------------------------------------
 Section VII BEECHCRAFT
 Systems Description Musketeer A23, A23A
 FUEL TANKS
 Fuel tanks located in each wing leading edge have a nominal capacity of 29.9
 gallons. In the filler neck of each tank is a visual measuring tab which
 permits partial filling of the fuel system. When the fuel touches the bottom
 of the tab it indicates 15 gallons of fuel, and when filled to the slot in
 the tab it indicates 20 gallons of fuel. The indicating system reads full at
 20 gallons. The pilot must visually check the fuel level during preflight to
 ascertain desired level. Fuel is fed from the desired tank through a fuel
 selector valve in the center floorboard and then through a strainer to the
 engine-driven fuel pump.
 A fuel return line from the engine-driven fuel pump returns approximately 3
 to 6 gallons of fuel per hour to the left tank when the engine is operating
 at 75% power or less.
 FUEL DRAINS
 Two tank sump drains extend through the bottom of the wing skins, near the
 fuselage. The system low spot drain is incorporated in the fuel strainer on
 the lower right side of the fuselage aft of the nose wheel. Sump drains
 provide a means to visually inspect the fuel for water or contaminants.
 Refer to HANDLING, SERVICING, AND MAINTENANCE Section for procedures
 describing how and when to use fuel tank sump drains.
 FUEL QUANTITY INDICATORS
 Fuel quantity is measured by a float
 operated sensor, located in each wing tank
 system. These transmit electrical-signals
 that indicate fuel remaining in each tank.
 The indicators indicate full when 20 or more
 gallons are in each wing tank.
 BEECHCRAFT Section II
 Musketeer A23, A23A Limitations
 FUEL
 TOTAL FUEL with left and right wing fuel systems full:
 Two . 29.9-gallon tanks in wings with a total of . 58.8 gallons usable.
 After compliance with BEECHCRAFT S.I. No. 0624-281:
 Two . 29.9-gallon tanks in wings with a total of . 52.2 gallons usable.
Note FNBNFN . Value given is nominal. Tank capacity will vary with temperature and
 manufacturing tolerances.
 FUEL MANAGEMENT
 Do not take off when the Fuel Quantity Gages indicate in the . Yellow Band or
 with less than 11 gallons in each main tank.
 Maximum slip duration: 30 seconds
Note FNBNFN . Yellow bank was installed by BEECHCRAFT S.I. No. 0624-281.
 CAUTION
 Use 15 gallons from the left tank first.
 
 
 [1]
 The pleadings state that Beech is a Delaware corporation with its principal place of business in Kansas; C & J Associates, Inc. is an Illinois corporation with its principal place of business in Illinois; Prince Alexander, Jr., Marvin A. Alexander and Tanya L. Alexander are citizens of the State of Washington; decedents, Prince Alexander, Sr. and R.A. Webber, were citizens of Alabama; and plaintiff, L.M. Demko, was likewise a citizen of Alabama
 
 
 [2]
 This statute of repose, titled as a "Statute of limitations," was adopted as part of the Indiana Products Liability Act of 1978, Indiana Acts 1978, P.L. 141, § 28, Ind.Code Ann. § 34-4-20A-1 through § 34-4-20A-8 (Burns 1986). The limitation provisions which are critical here are in the statute of repose appearing in Ind.Code Ann. § 34-4-20A-5 (Burns 1986):
 Statute of limitations.--This section applies to all persons regardless of minority or legal disability. Notwithstanding IC 34-1-2-5, any product liability action in which the theory of liability is negligence or strict liability in tort must be commenced within two years after the cause of action accrues or within ten years after the delivery of the product to the initial user or consumer; except that, if the cause of action accrues more than eight years but not more than ten years after that initial delivery, the action may be commenced at any time within two years after the cause of action accrues.
 Although the statute is titled as a "Statute of limitations," we refer to it as a statute of repose. A statute of repose typically bars the right to bring an action after the lapse of a specified period, unrelated to the time when the claim accrued. The bar instead is tied to an independent event, such as delivery of the product to a purchaser in the stream of commerce for a products liability statute. A statute of limitations generally bars the bringing of an action after the passage of a given period of time following the accrual of the claim. See Eddings v. Volkswagenwerk, A.G., 835 F.2d 1369, 1371-72 n. 2 (11th Cir.), cert. denied sub nom., 488 U.S. 822, 109 S.Ct. 68, 102 L.Ed.2d 44 (1988); Anderson v. M.W. Kellogg Co., 766 P.2d 637, 640 (Colo.1988). Both types of statutes are often referred to as statutes of limitations. The Indiana statute quoted above has some elements of both types of statutes.
 
 
 [3]
 The original specifications for the aircraft stated that it had a fuel capacity of 59.8 gallons with 58.8 gallons usable. This was later revised to state that the fuel capacity was 59.8 gallons with only 52.2 gallons usable, reflecting a determination by Beech that there were 6.6 fewer usable gallons of fuel in the airplane model than had originally been thought. II R. Doc. 89
 
 
 [4]
 Our review of the record does not support this claim of plaintiffs. The Civil Air Regulations, submitted by plaintiffs, state that "[a]n Airplane Flight Manual shall be furnished with each airplane, having a maximum certificated weight of more than 6,000 pounds.... For airplanes having a maximum certificated weight of 6,000 pounds or less an Airplane Flight Manual is not required; instead, the information prescribed in this part for inclusion in the Airplane Flight Manual shall be made available to the operator by the manufacturer in the form of clearly stated placards, markings or manuals." Civil Air Regulations § 3.777, II R. Doc. 121, at 3. The Musketeer A23A has a maximum take-off weight of 2,300 pounds and is categorized as weighing 6,000 pounds or less. III R. Doc. 176, Ex. 2, 3 & n. 2
 
 
 [5]
 Plaintiffs contend that the fuel gauges and placards on the aircraft as originally manufactured and delivered were inaccurate, stating that "[i]n this case Beech was aware of the two defects [the fuel system and the shoulder harness] at the time of the original design and manufacture, but concealed them." Appellant's Br. at 29. Their argument is further that "not until forced by the FAA in 1971 did Beech undertake to correct the useable fuel information in the Pilot/Operator's Manual and on the aircraft in 1974 [sic]." Id
 The evidence presented in affidavits and addenda to pleadings focuses on the alleged misinformation furnished with the original plane. See Beechcraft Service Instructions No. 0624-281, II R. Doc. 90 (directing replacarding of aircraft to increase indicated amount of unusable fuel); Beechcraft Owner/Pilot Handbook Excerpt, Id. (indicating that after installation of placards under Service Instruction No. 0624-281 the usable fuel would be only 52.2 gallons instead of 58.8 gallons); Declaration of Eugene Conrad, II R. Doc. 91 at 2 (stating that the usable fuel information in the Musketeer was in error by a substantial amount and that the decision of Beech not to warn owners of the correct amount of usable fuel was reckless); Affidavit of James F. Leggett, III R. Doc. 156 at 2, 12-13, 30 (stating that prior to the service instruction implementation, which involved only relabeling and nothing physical, neither the Musketeer placards nor handbook gave an accurate indication of the actual amount of usable fuel).
 
 
 [6]
 The First Amended Complaint of plaintiffs stated in part:
 II. STRICT PRODUCT LIABILITY
 ... [W]hen manufactured and delivered said aircraft was dangerous, defective and unreasonably safe [sic] in that ... the fuel gauges were not accurate, the fuel tanks trapped fuel, the fuel system had a propensity to dump or vent fuel overboard, and was uncrashworthy in that, among other things, the pilot and passenger stations were not equipped with shoulder harnesses, the seat belts were too weak and the instrument panel and yokes were not designed and manufactured to minimize impact injuries to occupants. Further at the time of sale and/or subsequent thereto, said defendants became aware of facts sufficient to place them on notice of said defects and said defendants did not correct said defects or warn the purchasers or operators of said defects.
 III. NEGLIGENCE
 The defendants ... unlawfully and intentionally designed, manufactured, tested, sold, advertised, delivered and post-delivery maintained [the aircraft] ... in that among other things the fuel gauges were not accurate, the fuel tanks trapped fuel, the fuel system pumped fuel overboard, and it was uncrashworthy. Further, ... defendants became aware of facts to put them on notice of these deficiencies ... and failed to repair the aircraft and/or warn owners and operators of these deficiencies, all so as to proximately cause the injuries....
 First Amended Complaint, I R. Doc. 32 at 4-5 (emphasis added).
 Plaintiffs also describe their claims as being based on the defendants'
 failing to correct a known defect/unsafe condition within the time constraints of the Indiana statute [and] ... the decision by Beech not to disseminate Service Instruction 0624-281 to all aircraft owners in May 1974 and its decision not to pay for the installation of shoulder harnesses in connection with its safety communique and Class I Service Instruction 1020 in 1980.
 ....
 WRONGFUL CONDUCT OF BEECH AIRCRAFT
 As indicated above, the plaintiffs' causes of action against Beech Aircraft Corporation deal primarily with deliberate corporate decisions not to disseminate corrective action on the aircraft unuseable fuel to owners and operators of all Beech aircraft in the field and the determination by Beech Aircraft Corporation not to pay for the compliance with either the useable fuel alterations or the installation of the shoulder harnesses on this aircraft.
 Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, I R. Doc 65 at 8-9.
 Thus, the plaintiffs' claims were grounded on alleged defects in the plane as manufactured and delivered in 1967 with respect to the indications of usable fuel remaining and unusable fuel, and the shoulder harnesses; and, the gist of the subsequent wrongful acts is Beech's failure to warn of these defects and urge their correction.
 
 
 [7]
 Plaintiffs state that
 Neither Beech Service Bulletin 0624-281 [regarding the fuel gauge correction decal kit] nor Beech Safety Communique and Class I Service Instruction 1020 [regarding installation of shoulder harnesses] had been complied with on the subject aircraft.
 See Plaintiffs' Reply to Defendant Beech's Reply to Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment, II R.Doc. 79 at 3. Again, the plaintiffs rely on defects in the plane as manufactured and delivered in 1967.
 
 
 [8]
 Section 60-3303 provides that a product seller shall not be liable on a product liability claim if the seller proves that the harm was caused after the product's "useful safe life" had expired. The statute further provides:
 (b)(1) In claims that involve harm caused more than 10 years after time of delivery, a presumption arises that the harm was caused after the useful safe life had expired. This presumption may only be rebutted by clear and convincing evidence.
 ....
 B. The ten-year period of repose established in paragraph (1) of this subsection does not apply if the product seller intentionally misrepresents facts about its product, or fraudulently conceals information about it, and that conduct was a substantial cause of the claimant's harm.
 
 
 [9]
 Through a parity of reasoning, we find that the two-year limitation period of the Indiana wrongful death statute applies here as substantive law of Indiana. The Indiana Court of Appeals has held that "[s]ince this right [to maintain an action for wrongful death] is purely statutory, the two year time period within which an action must be commenced is a 'condition attached to the right to sue.' ... [T]his two year time period is not a statute of limitation but a condition precedent to the existence of the claim." General Motors Corp. v. Arnett, 418 N.E.2d 546, 547 (Ind.Ct.App.1981); see Honda Motor Co. v. Parks, 485 N.E.2d 644, 645 (Ind.Ct.App.1985)
 
 
 [10]
 The plaintiffs rely on Price v. Grimes, 234 Kan. 898, 677 P.2d 969 (1984), and Wolf v. Brungardt, 215 Kan. 272, 524 P.2d 726 (1974), as support for their claim that the public policy of Kansas mandates that Beech's alleged fraud be treated as tolling the commencement of the statute of repose. Price and Wolf, however, are both cases which involved civil fraud actions and the specific statutory provision, Kan.Stat.Ann. § 60-513(a)(3), which provides for the statute of limitations regarding fraud actions not to begin running until the fraud is discovered. Price, 677 P.2d at 972; Wolf, 524 P.2d at 733. Indiana has also applied the doctrine of fraudulent concealment tolling the running of statutes of limitations in circumstances where the defendant has taken affirmative steps to prevent the discovery of a cause of action, or where the defendant has a fiduciary relationship to the plaintiff and remains silent about a possible cause of action. Carrow v. Streeter, 410 N.E.2d 1369, 1373-74 (Ind.Ct.App.1980); see also Tolen v. A.H. Robins Co., Inc., 570 F.Supp. 1146 (N.D.Ind.1983)
 Here there is no showing of facts by plaintiffs that there was concealment of a cause of action against Beech. The cases relied on by plaintiffs, Price and Wolf, do not support plaintiffs' argument that application of the statute of repose of Indiana would be contrary to the public policy of Kansas.
 
 
 [11]
 Statutes of repose have been challenged under state constitutions as being violative of either equal protection, due process or an "open courts" or "free access to courts" provision in the state constitutions. Generally, equal protection and due process analysis under a state constitution follows that for a federally based equal protection challenge, that is, a rational basis test. Several courts have held such statutes of repose constitutional, rejecting challenges under similar clauses contained in their respective state constitutions. See, e.g., Kelemen v. Rimrock Corp., 207 Conn. 599, 542 A.2d 720, 725 (1988) (access to courts); Jones v. Five Star Engineering, Inc., 717 S.W.2d 882, 882-83 (Tenn.1986) (due process, equal protection and access to courts); Pullum v. Cincinnati, Inc., 476 So.2d 657, 658-60 (Fla.1985) (equal protection); Mono Manufacturing Co., 99 Ill.App.3d 722, 54 Ill.Dec. 657, 425 N.E.2d 522 (1981) (due process). Contra, e.g., Kennedy v. Cumberland Engineering Co., Inc., 471 A.2d 195, 197-01 (R.I.1984) (remedy for all wrongs); Heath v. Sears, Roebuck, Inc., 123 N.H. 512, 464 A.2d 288, 297-98 (1983) (equal protection); Lankford v. Sullivan, Long & Hagerty, 416 So.2d 996, 1003 (Ala.1982) (open courts)
 
 
 [12]
 For equal protection analysis, the rational basis test involves determining whether the classification under the statute "rationally advances a reasonable and identifiable governmental objective." Schweiker v. Wilson, 450 U.S. 221, 235, 101 S.Ct. 1074, 1083, 67 L.Ed.2d 186 (1981); Olsen v. J.A. Freeman Co., 117 Idaho 706, 791 P.2d 1285, 1290 (1990). Numerous courts have determined that products liability statutes of repose do not violate the Equal Protection Clause of the Fourteenth Amendment. E.g., Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1137-40 (6th Cir.1986); Pitts, 712 F.2d at 280-81; Olsen, 791 P.2d at 1290; Sealey v. Hicks, 309 Or. 387, 788 P.2d 435, 441 cert. denied sub nom., --- U.S. ----, 111 S.Ct. 65, 112 L.Ed.2d 39 (1990); Tomlinson v. Celotex Corp., 244 Kan. 474, 770 P.2d 825, 830-33 (1989); Kelemen v. Rimrock Corp., 207 Conn. 599, 542 A.2d 720, 725-26 (Conn.1988); Anderson v. M.W. Kellogg Co., 766 P.2d 637, 645 (Colo.1988); Lester v. Eli Lilly and Co., 698 F.Supp. 843, 845 (D.Kan.1988), aff'd, 893 F.2d 1340 (10th Cir.1990). But see Austin v. Litvak, 682 P.2d 41, 48-53 (Colo.1984) (medical malpractice statute); Perez v. Universal Engineering Corp., 413 So.2d 75 (Fla.Dist.Ct.App.1982) (construction statute); Shessel v. Stroup, 253 Ga. 56, 316 S.E.2d 155, 158 (1984) (medical malpractice); Henderson Clay Products, Inc. v. Edgar Woods & Assocs., Inc., 122 N.H. 800, 451 A.2d 174 (1982); Broome v. Truluck, 270 S.C. 227, 241 S.E.2d 739, 740-41 (1978) (construction statute); Loyal Order of Moose, Lodge 1785 v. Cavaness, 563 P.2d 143, 145-48 (Okla.1977) (construction statute). Cf. Heath v. Sears, Roebuck, Inc. 123 N.H. 512, 464 A.2d 288 (1983) (products liability statute of repose under state equal protection analysis); Shibuya v. Architects Hawaii, Ltd., 65 Haw. 26, 647 P.2d 276, 283-88 (1982) (construction statute)
 
 
 [13]
 The discovery rule acts to prevent a cause of action from accruing until the plaintiff discovered or should have discovered, in the exercise of reasonable diligence, the fact and cause of his injury. Heath v. Sears, 123 N.H. 512, 464 A.2d 288, 294 (1983); see Williams v. Borden, Inc., 637 F.2d 731, 734 (10th Cir.1980); Barnes v. A.H. Robins, 476 N.E.2d at 84. "The rule is based on the reasoning that it is inconsistent with our system of jurisprudence to require a claimant to bring his cause of action in a limited period in which, even with due diligence, he could not be aware a cause of action exists." Barnes, at 84; see Heath, 464 A.2d at 294
 
 
 [14]
 The disclosure of the photos did not take place until plaintiffs filed a motion to compel on May 5, 1986, which was granted on June 16, 1986